A93A0396. CALLAWAY v. THE STATE.
(431 SE2d 143)

BEASLEY, Presiding Judge.

Callaway appeals from the judgments of conviction and sentences entered for two counts of child molestation, OCGA § 16-6-4 (a). His motion for new trial was denied.

1. Appellant, who is indigent, contends the trial court erred in denying his application for funds for an independent psychiatric examination.

In accordance with USCR 31.4 (A), appellant filed a notice of intent to raise the issue of insanity or mental incompetency at the time

of the acts charged and at the time of trial. The court, under USCR 31.5, ordered a mental evaluation by the Department of Human Resources to ascertain appellant's competency in both regards.

In a joint report by a psychologist and a psychiatrist at Georgia Regional Hospital, appellant was found to be "functioning within the borderline range of intellectual capability," but exhibiting no "major psychiatric and/or psychological dysfunctioning." His competency to stand trial was addressed as follows: "based upon his cognitive and verbal capabilities, we would judge him to be able to effectively assist his attorney in the preparation of his defense. . . . It is therefore our opinion he may be considered competent to stand trial. . . ." The report concluded: "Our examination of Mr. Callaway this date fails to find any evidence indicative of a major psychiatric disorder of either mood or thought which could conceivably influence and/or adversely affect his behaviors. We find no indication, either historically or at this time, that Mr. Callaway suffered from a psychosis such that his contact with reality has been compromised. He demonstrates an ability to differentiate between right and wrong in a general sense, a capability we would surmise to have been in place during the time frame in question. His actions therefore are considered to have been volitional and goal-directed, free from influence of any delusional and/or hallucinatory activity over which he would have no control. It is therefore our opinion Mr. Callaway may be considered psychologically competent and responsible for his behaviors."

Appellant thereafter filed a "motion for funds for psychiatric assistance" to retain a private psychiatrist to help "ensure the preparation of a proper defense." He had previously filed a "motion for leave to proceed ex parte, in camera and on a sealed record with regard to applications for expert and investigative assistance," under the authority of *Brooks v. State*, 259 Ga. 562 (2) (385 SE2d 81) (1989).

Nothing further appears in the record with respect to the above-stated motions. Although certain other motions were heard prior to trial and the court inquired about the need to address any additional matters, none were mentioned. Appellant did not file a plea of mental incompetency to stand trial, OCGA § 17-7-130, and did not present an incompetency defense at trial, OCGA § 17-7-131. Instead, he testified in his own behalf and denied the charged misconduct.

Appellant asserts first that the court failed to ascertain satisfactorily his competency to stand trial. After the issue was drawn into question by appellant's notice of intent, the court fulfilled its duty under USCR 31.5 by ordering a psychiatric evaluation. Appellant contends that his competency to stand trial should also have been determined by a special jury under the procedure of OCGA § 17-7-130. However, its requirements are implemented when a plea of mental incompetency to stand trial is filed. No such plea was filed. Other

than his notice of intent, which was met with psychiatric evaluation, there was nothing before the court which raised a question of appellant's competency and required it to constitute a special jury under OCGA § 17-7-130. *Christenson v. State*, 261 Ga. 80 (2) (b) (402 SE2d 41) (1991). Compare *Baker v. State*, 250 Ga. 187 (1) (297 SE2d 9) (1982) (where there was evidence that defendant was psychotic and unable to understand the proceedings, it was error to dismiss a special plea of incompetency without a hearing under former OCGA § 17-7-130); *Holloway v. State*, 257 Ga. 620 (2) (361 SE2d 794) (1987) (when evidence during trial indicated defendant was incompetent, the court was required to hold a hearing on the issue of competence to stand trial).

Second, appellant asserts that the court erred in refusing his request for funds for an independent evaluation. " 'Whether to grant the motion (for a second psychiatric examination) was in the discretion of the trial court . . . (cit.).' [Cit.] That determination 'will not be overturned unless an abuse of discretion is shown. (Cit.)' [Cit.]" *Tolbert v. State*, 260 Ga. 527 (2) (a) (397 SE2d 439) (1990).

Appellant showed no specific need for a second evaluation, other than to "ensure the preparation of a proper defense." His claim of mental deficiency was addressed in the original evaluation, which resulted in a finding of competency and the absence of any serious mental disorder. It was not abuse of discretion to deny the motion for an independent state-paid psychiatric evaluation. *Christenson*, supra at (2) (c). See also *Roseboro v. State*, 258 Ga. 39, 41 (3) (d) (365 SE2d 115) (1988), which describes the showing an indigent defendant must make when requesting public funds to obtain the services of a scientific expert.

Since appellant did not present his application for funds in the presence of the state and was not required to reveal his theory of the case to the prosecution, it follows that there was no violation of *Brooks*, supra. Moreover, as there was no entitlement to state funds for a second psychiatric evaluation, the failure to conduct an ex parte hearing as described in *Brooks* was not error.

Appellant also asserts that he was denied due process of law under *Ake v. Oklahoma*, 470 U. S. 68 (105 SC 1087, 84 LE2d 53) (1985). *Ake* held that "when a defendant has made a preliminary showing that his sanity at the time of the offense is likely to be a significant factor at trial, the Constitution requires that a State provide access to a psychiatrist's assistance on this issue if the defendant cannot otherwise afford one." 470 U. S. at 74. Appellant has not made a preliminary showing that his "mental condition [at the time of the offense was] seriously in question." 470 U. S. at 82. In addition, he did receive the assistance of a psychiatrist at the state's expense. *Ake* rejected the notion that an "indigent defendant has a constitutional

right to choose a psychiatrist of his personal liking or to receive funds to hire his own." 470 U. S. at 83.

Appellant was not entitled to public funds for an independent psychiatric evaluation for any of the reasons advanced.

2. During voir dire, a prospective juror asked to be dismissed for the reason that he and appellant had worked together for 15 years, and "I don't think I could be right for this case. . . ." In response to the court's inquiry whether he could put aside his acquaintance with appellant and decide the case strictly on the evidence, the juror responded, "Yes, I could but . . . I've got so many mixed emotions about it. But I'll put it like this. From what I thought of [appellant] first and then after what I found out, I just don't think I could be fair." The juror was excused for cause.

Appellant's counsel objected on the basis that the juror's remarks tainted the entire panel and denied him a fair trial. The state requested curative instructions and the court admonished the jury that they may draw no inference from the remarks and to disregard them entirely. The court then inquired whether any juror could not follow those instructions and decide the case on the evidence. None responded.

During the continuing voir dire, several additional members of the panel were excused for cause, either because they knew appellant or expressed their inability to be impartial, for reasons independent of the juror's statements. At the conclusion of the questioning, appellant moved for mistrial on the ground previously asserted, noting that "six people . . . walked out that said that they could not be impartial." Mistrial was denied.

"[S]ince a jury had not yet been impaneled and sworn to try the case, the motion for mistrial was premature. [Cit.] The proper procedural tool for the defense to have used was either a 'challenge to the poll' [cits.] or a motion for a postponement to impanel other jurors who had not heard the remark." *Lingerfelt v. State*, 147 Ga. App. 371, 373 (1) (249 SE2d 100) (1978). However, as in *Lingerfelt*, the import of the motion was clear, "i.e., that the prospective jurors had been prejudiced by the remarks and that the appellant was entitled to a new panel from which to choose a jury to hear his case." Id. at 373. Accordingly, we will consider the merits of appellant's claim. Accord *Hughey v. State*, 180 Ga. App. 375, 377 (2) (348 SE2d 901) (1986); *Moore v. State*, 156 Ga. App. 92 (1) (274 SE2d 107) (1980). Compare *Frady v. State*, 203 Ga. App. 833 (418 SE2d 114) (1992).

The inquiry is whether the remarks were "*inherently* prejudicial and deprived the appellant of his right to begin his trial with a jury 'free from even a suspicion of prejudgment or fixed opinion. . . .' [Cit.]" *Lingerfelt*, supra at 373. If so, failure to excuse the entire panel constituted an abuse of the trial court's discretion. *Roberts v.*

*State*, 259 Ga. 441 (2) (383 SE2d 872) (1989). Of course, where the facts establish only "gossamer possibilities of prejudice," *Snyder v. Mass.*, 291 U. S. 97, 122 (54 SC 330, 78 LE2d 674) (1934), prejudice is not inherent.

In *Lingerfelt*, which included prosecutions for rape and sodomy, a prospective juror stated during voir dire that he heard too much about the defendant to be impartial. When questioned further in the presence of the panel, the juror named several persons who claimed that defendant was a peeping Tom. This court concluded: "Had the juror said nothing more than that he heard too much about the defendant to be impartial, disqualification of the remainder of the panel would not have been necessary. [Cit.] However, the responses subsequently elicited from him went far beyond this and constituted improper testimony which branded the accused as a sex deviate before the trial had even begun. An instruction to the remainder of the panel to disregard these comments could not have been sufficient to erase the potential harm done." *Lingerfelt*, supra at 372.

*Moore* involved an arson prosecution. During voir dire, a prospective juror volunteered: "[Defendant] was a volunteer (fireman). I worked with a guy that said that he was a firebug. He said that he would be the first one on the fire scene; that he would set the fire and then run back to the fire house." Id. at 92. This court acknowledged: "It cannot seriously be argued that a prospective juror in an arson case could remain neutral after hearing sworn testimony by another prospective juror to the effect that the defendant was reputed to be a firebug." Id. at 93. Since the knowledge which necessitated disqualification of the panel member was conveyed to the others, their disqualification was also required.

The present case is factually distinguishable. The juror's remarks most closely resemble that which we found acceptable in *Lingerfelt*, i.e., "nothing more than that he heard too much about the defendant to be neutral." Although the comments were clearly directed at appellant, compare *Frady*, supra, they did not necessarily imply guilt of the offense under consideration, unlike the remarks in *Lingerfelt* and *Moore*. Neither did they "link [appellant] to other criminal violations . . . which were complete and separate from the offense for which he was being tried." *Roberts*, supra at 443 (2). We do not find "inherent prejudice" in the fact that other members of the panel were subsequently excused for cause. They were disqualified for unrelated reasons. Nor are the juror's statements, which did not reveal the nature or basis for his own bias, inherently prejudicial.

Taken together with the court's remedial measures, and the assurances that the remaining jurors could follow the court's admonition, we find no abuse of discretion in refusing to disqualify the entire panel on the basis of the juror's comments. Accord *Roberts*, supra;

*Frady*, supra; *Hughey*, supra.
  *Judgment affirmed. McMurray, P. J., and Cooper, J., concur.*

DECIDED APRIL 19, 1993.

Hallman & Stewart, D. Jay Stewart, for appellant.
  *Dupont K. Cheney, District Attorney, J. Stephen Archer, Assistant District Attorney*, for appellee.