**FOURTH DIVISION**
**DOYLE, P. J.,**
**ANDREWS, P. J. and BOGGS, J.**

NOTICE: Motions for reconsideration must be
*physically received* in our clerk's office within ten
days of the date of decision to be deemed timely filed.
(Court of Appeals Rule 4 (b) and Rule 37 (b), February 21, 2008)
http://www.gaappeals.us/rules/

**February 14, 2013**

# In the Court of Appeals of Georgia

A12A2110. KING v. THE STATE.                                    DO-080 C

DOYLE, Presiding Judge.

Following a jury trial, Michael Rossini King was convicted of aggravated sodomy.[1] He appeals the subsequent denial of his motion for new trial, arguing that (1) the State failed to prove venue; (2) the evidence was insufficient to support his conviction; (3) the trial court erred by failing to strike the jury panel; and (4) he received ineffective assistance of counsel;

Construed in favor of the verdict,[2] the record shows that on December 31, 2008, four-year-old T. E. told his great-aunt, B. B., that his "butt hurt[]." T. E.'s mother, N. E., examined him and saw that his butt was red and had "a bump" on it.

---

[1] OCGA § 16-6-2 (a) (2).

[2] See *Short v. State*, 234 Ga. App. 633, 634 (1) (507 SE2d 514) (1998).

T. E. told her that "Pawpaw kept messing with me in my butt when we go to Cordele in the green truck to take Ty's four-wheeler back. . . ." B. B. then examined T. E., and saw that his "butt . . . was red and . . . standing open and . . . looked like it was irritated. T. E. told her that "Pawpaw hurt my butt . . . [H]e stuck his penis in my butt, he hurt my butt."

B. B.'s son, D. D., also examined T. E., and he observed that the child's anus "was wide," "wasn't normal," and had a "wide ring around it." D. D. also heard T. E. say that "Pawpaw" "messed with him . . . in his green truck" on the way to Cordele.[3] T. E.'s father arrived shortly thereafter, and he observed the child's swollen, red "behind."

T. E.'s family took him to the hospital, and on January 5, 2009, they took him to the Crescent House, a child advocacy center that conducts physical examinations and interviews of purportedly sexually abused children. Pediatric nurse practitioner Allison Butler examined T. E. using a culpascope, which is a lighted magnifying glass that has a digital camera and can project the magnified images onto a computer screen. Butler observed that T. E.'s anus was red, inflamed, swollen, and contained a "significant" anal fissure. According to Butler, her observations were consistent

---

[3] T. E. referred to King, his maternal step-grandfather, as "Pawpaw."

with T. E.'s allegation of anal penetration. Butler recommended that T. E. return for a follow-up visit to see if his anus had healed to rule out the possibility of a genetic abnormality. T. E. returned on January 13, 2009, and Butler's examination indicated that his anus had normal tone, i.e., "was closed up tight," the fissure was healing and smaller, and the swelling had decreased, which findings indicated that T. E.'s injury resulted from acute trauma and sexual abuse.

Dr. Debbie West, the director of the Crescent Center, reviewed the photographs and notes from Butler's examination of T. E. Dr. West observed "a fairly significant tear with a fair amount of swelling and discoloration" in T. E.'s anus in the photographs during the initial examination. The photographs from the subsequent exam indicated healing, which was inconsistent with a birth defect.

At trial, T. E. explained that he used to live with King, his "Pawpaw," in Dooly County. T. E. testified that King "put his worm in" T. E.'s "booty" in King's green truck during a ride home following a trip to Cordele. T. E. stated that he cried and asked King to stop, but King continued. According to T. E., he and King were alone in the truck.

King's wife (T. E.'s grandmother), Lizzie King, testified that T. E. lived with her and King in Dooly County. Lizzie testified that King was in Atlanta during the

3

months leading up to New Year's Eve; when he arrived home that evening, Lizzie, King, and T. E. drove to Cordele in King's truck to retrieve her son's four-wheeler, and that at no time during that day did King sexually abuse T. E.

King's mother, Bernice King Lundy, testified that T. E. was at her house during the day on December 31. At one point, T. E. cried because he slipped and hurt himself while playing with a seesaw he made in her backyard from cross boards and two-by-fours. T. E. then got back on the seesaw and hurt himself again.

Nurse Butler testified on cross-examination that she was not aware at the time of her examination of T. E. that he had been diagnosed with pinworms.[4] According to Butler, pinworms could cause itching, resulting in the child scratching his rectum, but that such would not cause the type of trauma she observed during T. E.'s exam. Butler conceded that constipation could cause an anal fissure. When asked whether a straddle injury could cause swelling in a child's rectal area, she answered, "Not in the actual rectum. When the child has a straddle injury, it's usually more in the perineum. It would have to be that he straddled a blunt object that went in his rectum to cause swelling in that particular area."

---

[4] T. E.'s pediatrician testified that he was treated for pinworms in October 2008.

4

During cross-examination, Dr. West testified that she could not exclude all the possible causes of T. E.'s anal trauma and that fissures can result from diarrhea, "significant constipation," inflammatory bowel disease, or trauma. According to Dr. West, pinworms cause itching and redness, causing children to scratch themselves, but T. E. had "a lot of trauma[, which] would have hurt in order to have caused this[,] and even with pinworms, when a kid scratch[es], they are not going to inflict that much self-injury." Finally, Dr. West testified that "it would be a little bit unlikely" that falling off of a seesaw could create a fissure and that "[i]t would depend on if the child had clothes on or not, it would depend on whether the child impaled like a nail or something like that"; because the anus is protected by the buttocks, "it would have be something that penetrated fairly much . . . to hit the anus and go through it."

The jury found King guilty of aggravated sodomy. He filed a subsequent motion for new trial, which the trial court denied, and this appeal followed.

1. King argues that there was insufficient evidence that venue was proper in Dooly County. This enumeration is without merit.

Georgia law provides that "[c]riminal actions shall be tried in the county where the crime was committed, except as otherwise provided by law."[5]

---

[5] OCGA § 17-2-2 (a).

[T]he State may establish venue by whatever means of proof are available to it, including direct and circumstantial evidence. As an appellate court, we view the evidence in a light most favorable to support the verdict and determine whether the evidence was sufficient to permit a rational trier of fact to find beyond a reasonable doubt that the crime was committed in the county where the defendant was indicted.[6]

Pursuant to OCGA § 17-2-2 (e), "[i]f a crime is committed upon any . . . vehicle . . . traveling within this state and it cannot readily be determined in which county the crime was committed, the crime shall be considered as having been committed in any county in which the crime could have been committed through which the . . . vehicle . . . has traveled."

In this case, King lived in Dooly County, and there was evidence that the sodomy occurred in King's truck during a trip to Cordele.[7] "[T]he evidence established that the vehicle in which the aggravated sodomy occurred traveled

---

[6] (Citation omitted.) *Chapman v. State*, 275 Ga. 314, 317 (4) (565 SE2d 442) (2002), citing *Jones v. State*, 272 Ga. 900, 903-904 (3) (537 SE2d 80) (2000).

[7] Although she asserted that no sexual assault occurred during the trip, Lizzie testified that she, King, and T. E. left King and Lizzie's home, which was in Dooly County, and went to Cordele to retrieve a four-wheeler.

6

through [Dooly] County, and thus, the [S]tate proved venue as to this crime beyond a reasonable doubt."[8]

2. King challenges the sufficiency of the evidence. This enumeration is without merit.

When reviewing the sufficiency of the evidence,

> the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. Once a defendant has been found guilty of the crime charged, the factfinder's role as weigher of the evidence is preserved through a legal conclusion that upon judicial review *all of the evidence* is to be considered in the light most favorable to the prosecution.[9]

Here, T. E. testified that King put his "worm" in T. E.'s "booty," causing him to cry, multiple witnesses testified that T. E. told them that King hurt his bottom, family members testified about the injuries to T. E.'s anus, the jury saw photographs

---

[8] *Prudhomme v. State*, 285 Ga. App. 662, 665 (2) (647 SE2d 343) (2007). See *Withman v. State*, 210 Ga. App. 159, 160 (435 SE2d 519) (1993).

[9] (Citations omitted; emphasis in original.) *Jackson v. Virginia*, 443 U. S. 307, 319 (III) (B) (99 SC 2781, 61 LE2d 560) (1979).

of his injuries, and a nurse practitioner and doctor testified about the injuries to T. E.'s anus, which were consistent with trauma. Thus, King's assertion that the sole evidence that King sodomized T. E. was the child's testimony is belied by the record. Further, "[t]he victim's testimony alone was sufficient to support the conviction."[10] "Resolving evidentiary conflicts and inconsistencies, and assessing witness credibility, are the province of the factfinder, not [the appellate courts]."[11] The evidence was sufficient to support King's conviction.[12]

3. King contends that the trial court erred by failing to strike the entire jury panel after a prospective juror's response to questioning during voir dire. We disagree.

---

[10] *Cobb v. State*, 254 Ga. App. 48 (1) (561 SE2d 124) (2002).

[11] *Odett v. State*, 273 Ga. 353, 353-354 (1) (541 SE2d 29) (2001).

[12] See OCGA § 16-6-2 (a) (1) ("A person commits the offense of sodomy when he or she performs or submits to any sexual act involving the sex organs of one person and the mouth or anus of another."); OCGA § 16-6-2 (a) (2) ("A person commits the offense of aggravated sodomy when he or she commits sodomy with force and against the will of the other person or when he or she commits sodomy with a person who is less than ten years of age."). See also *Morgan v. State*, 226 Ga. App. 327, 328-329 (2) (486 SE2d 632) (1997) (affirming conviction for aggravated sodomy based on six-year-old victim's testimony that the defendant rubbed his penis on her leg and buttocks and the evidence of bruising and scarring of victim's anus).

8

After the panel was advised that the case involved an allegation of aggravated sodomy on a child, a prospective juror indicated that he had heard people talking about the case and indicated that he was "not sure" whether he could set aside his knowledge about the case and deliberate based solely on the evidence. The juror stated: "I understand that a person is innocent until proven guilty but some of the stuff that I've heard, I don't know that I can put it aside. The juror also said that it was "very possibl[e]" that he had been influenced by what he had heard, but that he could follow the trial court's instructions. The trial court then excused the juror from the case, and voir dire continued.

Defense counsel then made a motion to strike the entire panel on the ground that the juror intimated that King was guilty and that his comments infected the entire panel. The trial court stated that it did not believe that the juror had expressed his opinion about King's guilt or innocence and denied the motion. The court offered to instruct the jury to disregard any extrajudicial statements and to confine their consideration to the evidence, but defense counsel declined, stating that, "There's no way to unring the bell[,]and so we will just leave it alone."

On appeal, King argues that the trial court erred by failing to strike the panel because the juror's comments were inherently prejudicial.[13]

> The inquiry is whether the remarks were *inherently* prejudicial and deprived the appellant of his right to begin his trial with a jury free from even a suspicion of prejudgment or fixed opinion. If so, failure to excuse the entire panel constituted an abuse of the trial court's discretion. Of course, where the facts establish only "gossamer possibilities of prejudice," prejudice is not inherent.[14]

As the trial court noted, however, the juror's comments "did not necessarily imply guilt of the offense under consideration. . . . Neither did they link [King] to other criminal violations[,] which were complete and separate from the offense for which he was being tried."[15] Taken together with trial counsel's failure to accept the trial

---

[13] King also argues that trial counsel's failure to require a curative instruction constituted ineffective assistance of counsel. That argument is addressed in Division 4, supra.

[14] (Citations and punctuation omitted; emphasis in original.) *Callaway v. State*, 208 Ga. App. 508, 511-512 (2) (431 SE2d 143) (1993).

[15] (Citations and punctuation omitted.) Id. at 512 (2) (affirming denial of motion to disqualify the jury panel where a prospective juror indicated that he was familiar with the defendant and did not think he could be fair). See also *Stafford v. State*, 271 Ga. 620, 622 (4) (523 SE2d 307) (1999) (affirming denial of motion for mistrial and to strike jury panel because defense counsel failed to seek curative instructions or question the other jurors following a prospective juror's comments that he was part of the rescue unit that responded to the crime and that it would be hard

court's offer to give curative instructions, "we find no abuse of discretion in refusing to disqualify the entire panel on the basis of the juror's comments."[16]

4. King further argues that the trial court erred by denying his motion for new trial because trial counsel was ineffective. We disagree.

> The effectiveness of trial counsel's assistance is evaluated under the standard in *Strickland v. Washington*,[17] which requires a criminal defendant to demonstrate both that his trial counsel's performance was deficient and that there is a reasonable probability that the trial result would have been different if not for the deficient performance. There is a strong presumption that the performance of trial counsel falls within the wide range of reasonable professional assistance. The reasonableness of the conduct is viewed at the time of trial and under the circumstances of the case. If an appellant fails to meet his burden of proving either prong of the *Strickland* test, the reviewing court need not examine the other prong. In reviewing the trial court's decision, we accept the trial court's factual findings and credibility determinations

---

to be fair and impartial given what he saw); *Hash v. State*, 248 Ga. App. 456, 458-459 (2) (546 SE2d 833) (2001) (affirming denial of mistrial following prospective juror's comment that the defendant looked like a patient and that her deliberations would be affected if the defendant had a repeat admission for substance abuse, concluding that the remarks were not inherently prejudicial and the defendant failed to question the remainder of the panel regarding lingering effects of the juror's comments and failed to request a more adequate curative instruction).

[16] *Calloway*, 208 Ga. App. at 512 (2).

[17] 466 U. S. 668 (104 SC 2052, 80 LE2d 674) (1984).

unless clearly erroneous, but we independently apply the legal principles to the facts.[18]

(a) King contends that trial counsel was ineffective by failing to accept the trial court's offer for a curative instruction following the prospective juror's purportedly prejudicial comment during voir dire, as discussed in Division 3, infra. Trial counsel considered the trial court's offer, including the court's caution that it might draw more attention to the comments, and declined, noting that there was "no way to unring the bell." Thus, trial counsel's refusal of the offer for curative instructions was a reasonable strategic decision, and such "strategic decisions do not amount to deficient performance."[19]

(b) King argues that trial counsel was ineffective for failing to submit photographs of the two-by-four boards on which Lundy testified T. E. was playing and fell. At the motion for new trial, trial counsel testified that he did not think that the jury would believe that the boards depicted in the photograph could have caused T. E.'s injury.

---

[18] (Footnotes and punctuation omitted.) *Allen v. State*, ___ Ga. App. ___, ___ (1) (734 SE2d 260) (2012).

[19] Id. at ___ (1). See *Bright v. State*, ___ Ga. ___, ___ (2) (b) (Case No. S12A1735, decided Jan. 7, 2013).

12

An attorney's decisions on which witnesses to call, what evidence to introduce[,] and which defenses to pursue are matters of trial tactics that do not amount to ineffective assistance of counsel. Such tactical decisions provide no grounds for reversal unless they are so patently unreasonable that no competent attorney would have chosen them.[20]

Trial counsel's strategic decision not to introduce photographic evidence "was not patently unreasonable, and this claim of ineffectiveness fails."[21]

(c) King also argues that trial counsel was ineffective for failing to call certain witnesses.

(i) King contends that trial counsel was ineffective for failing to call Michael J. King, Jr., Lundy's son, to corroborate her testimony that T. E. injured himself while playing on the seesaw. We have previously held, however, that the "failure to present cumulative evidence through additional witness testimony does not amount to ineffective assistance of counsel."[22]

---

[20] (Footnotes and punctuation omitted.) *Davis v. State*, 311 Ga. App. 699, 701 (2) (716 SE2d 710) (2011) (trial counsel's strategic decision not to introduce physical evidence did not constitute ineffective assistance).

[21] Id.

[22] *Gibbs v. State*, 316 Ga. App. 431, 432 (729 SE2d 563) (2012), citing *Johnson v. State*, 257 Ga. App. 30, 31 (1) (570 SE2d 344) (2002).

(ii) Officer John Taliaferro wrote a report following his visit to Crisp Regional Hospital in response to T. E.'s injury and allegations, and he indicated therein that Dr. Lawson, who examined T. E. "stated that there was a 'pimple'-like area at the six o'clock area of his anus. She stated that there was also some redness around the area. She stated that she did not see any torn tissue that would appear to have been from a sexual assault." King argues that trial counsel's failure to call Taliaferro or Dr. Lawson as witnesses constituted ineffective assistance of counsel.

At the motion for new trial hearing, trial counsel acknowledged the report and that he did not call either Taliaferro or Dr. Lawson. He did not testify regarding his reason for not calling them as witnesses, and in the absence of such testimony, "[w]e must presume that his counsel acted strategically."[23] Trial counsel could have reasonably decided not to call witnesses to testify that T. E.'s anus was red and had

---

[23] *Payne v. State*, 289 Ga. 691, 696 (3) (a) (715 SE2d 104) (2011). See also *Brown v. State*, 288 Ga. 902, 908 (5) (708 SE2d 294) (2011) (when trial counsel cannot recall specifics about the trial, including the reasons for his failure to make certain objections during the trial, we must presume that his decisions not to raise the objections "were a matter of strategy and trial tactics"); *Dickens v. State*, 280 Ga. 320, 321 (2) (627 SE2d 587) (2006) ("It is well established that the decision as to which defense witnesses to call is a matter of trial strategy and tactics; tactical errors in that regard will not constitute ineffective assistance of counsel unless those errors are unreasonable ones no competent attorney would have made under similar circumstances.") (citation omitted).

a bump on it the night he reported his allegations regarding King to his family in an effort to avoid introducing additional evidence of trauma to the child's anus. Thus, we cannot conclude that trial counsel's decision not to call Taliaferro or Lawson as witnesses "had a reasonable probability of affecting the result of the trial," particularly given the testimony of the family witnesses and the witnesses from the Crescent House regarding T. E.'s injuries.[24]

(d) Finally, King argues that trial counsel was ineffective for failing to question T. E's mother about a letter from the Department of Children and Family Services indicating that she failed to follow up with the Department although the abuse had been substantiated. Trial counsel testified at the motion for new trial hearing that he decided not to question the mother about the letter because it would further establish King's abuse of T. E. and that it would appear to be an attempt to discredit her, which would not help King's case. "Decisions about what questions to ask on cross-examination are quintessential trial strategy," and trial counsel's decision not to cross-examine the mother about the letter did not constitute ineffective assistance.[25]

*Judgment affirmed. Andrews, P. J. and Boggs, J., concur.*

---

[24] *Payne*, 289 Ga. at 697 (3) (a).

[25] Id. at 697 (3) (b).