In the Supreme Court of Georgia

Decided:   November 16, 2015

S15A1093.  McDUFFIE v. THE STATE.

NAHMIAS, Justice.

Appellant Eugene McDuffie was convicted of malice murder for the shooting death of Jurrell Clarke.[1]  On appeal, he contends that his trial counsel provided ineffective assistance and that remarks by the prosecutor during closing argument deprived him of due process.  We affirm.[2]

---

[1]  The spelling of the victim's name is the one used in the indictment.

[2]  The victim was killed on August 18, 2004.  On March 21, 2005, a Telfair County grand jury indicted Appellant on one count of malice murder.  The case was tried on May 9 and 10, 2006; the jury found Appellant guilty, and the trial court sentenced him to serve life in prison.  On May 31, 2006, Appellant's trial counsel filed a notice of appeal.  On August 23, 2006, new counsel filed an entry of appearance, and on October 9, 2006, Appellant filed a motion asking this Court to remand the case to the trial court so that he could pursue a claim of ineffective assistance of trial counsel. On October 30, 2006, we granted the motion, struck the appeal from this Court's docket, and remanded the case for the limited purpose of allowing an evidentiary hearing and ruling on the issue of ineffective assistance of trial counsel.  See Lopez v. State, 274 Ga. 663, 663 n.1 (558 SE2d 698) (2002); Slade v. State, 267 Ga. 868, 870 (485 SE2d 726) (1997).

The remittitur was filed in the trial court on November 27, 2006, and on December 11, 2006, Appellant filed a motion for new trial, which he amended on May 11 and 17, 2007.  On October 8, 2008, Appellant again amended his motion, and the trial court held an evidentiary hearing and requested briefs from the parties by December 1, 2008.  After a more than two-year delay, during which the original trial judge retired, Appellant finally filed a post-hearing brief on February 25, 2011.  Another 20 months passed before the State filed a response on November 5, 2012, and Appellant filed a reply on December 17, 2012.  Nearly two more years went by before Appellant filed a motion seeking a ruling on his motion for new trial on November 20, 2014.  On December

1.    Viewed in the light most favorable to the verdict, the evidence at trial showed the following. Around 9:30 p.m. on August 18, 2004, Clarke was driving in McRae, Georgia, when he spotted Appellant's Jeep Cherokee and turned to follow it, telling his nephew and his nephew's friend, who were in the car with him, that he needed to handle some business with Appellant. Appellant parked in front of the home of George Harris and walked up to the front porch, where Harris was talking with Tyler Southerland. Clarke parked behind the Jeep, got out, walked over to Appellant, and said to Appellant that Appellant's father had taken some "merchandise" – meaning cocaine – from his backyard and that he wanted it back. Appellant admitted that his father took the cocaine but said that he was not responsible for his father's actions. Appellant and Clarke then started arguing.

Meanwhile, Rashaan Crisp was in the backyard talking to Chelsea Walker. Appellant had given Crisp a ride to Harris's earlier that day, and on the way over

17, 2014, the trial court entered an order denying the new trial motion. However, the trial court clerk's office had failed to update its records when Appellant's counsel filed a change of address in 2012, so the court's order was sent to the wrong address. On January 30, 2015, Appellant filed a motion for out-of-time appeal, to which the State consented, and on February 5, 2015, the trial court granted Appellant an out-of-time appeal. Appellant then filed a timely notice of appeal, and the case was docketed for the April 2015 term and orally argued on September 15, 2015.

Appellant showed Crisp a 9mm handgun that he just got. Crisp heard Appellant and Clarke arguing in the front yard and came around from the back and positioned himself where he could overhear what was being said without being seen.

The argument between Appellant and Clarke became increasingly heated, and Clarke, who was much larger than Appellant, suggested that they fight it out in the street. Southerland, who was about the same size as Clarke, stepped up, said that Appellant was too small to fight, and invited Clarke to "fight me." At that point, Clarke called to his nephew to "get my gun" and started turning around to go back to his car. (Evidently this was a bluff, as Clarke did not have a gun in his car.) Appellant said, "you not the only one that has a gun," pulled out his new 9mm handgun, and fired two to three shots at Clarke from a distance of six or seven feet, hitting him once in the left thigh and once in the back of the head, which killed him. Crisp testified that he peeked around the corner just in time to see Appellant shoot Clarke.

Officer Benton Shumate of the McRae Police Department was outside the nearby police station, heard the shots, and went to investigate. As Officer Shumate drove down Harris's street, he saw Appellant's Jeep idling in the

3

middle of the road and Southerland and two other men standing alongside the Jeep talking to Appellant. The Jeep pulled forward into an intersection, turned right, and stopped again. One of the men with Southerland walked to Harris's front porch while Southerland and the other man walked over to the Jeep and resumed talking to Appellant. When the man who went to the porch saw the police car, he whistled and called out to Appellant, Southerland, and the other man, and they turned and looked at Officer Shumate. Appellant then sped off in the Jeep. Officer Shumate attempted to follow, but Southerland and the man with him came out into the street and waved him down under the pretense of asking for a ride home, allowing Appellant to get away. Officer Shumate contacted another officer in the area and gave him a description of Appellant's vehicle. That officer pulled the Jeep over a couple blocks away, and Appellant consented to a search, but no gun was found in the Jeep. Appellant was allowed to drive to the police station, where he was questioned, cited for impeding the flow of traffic and failing to stop for a stop sign, and released.

Two 9mm shell casings and two 9mm bullets fired from the same gun were found by the police at the crime scene, but the gun was not found. Within days of the shooting, someone told Appellant's girlfriend where the gun was

4

hidden, and she asked Cena Knowles to help her dispose of it. Knowles went with Appellant's girlfriend and another woman to the crime scene, retrieved the gun from its hiding place, and threw the gun into the middle of a river. Appellant was not arrested until January 4, 2005.

Southerland, Crisp, Clarke's nephew, and the nephew's friend all knew Appellant, and they each testified at trial that they saw Appellant shoot Clarke. Knowles testified about helping Appellant's girlfriend dispose of the gun. The defense acknowledged that Appellant was at the crime scene and that he argued with Clarke before the shooting, but denied that Appellant was the shooter, trying to cast suspicion on Harris, who did not testify at trial. Appellant did not testify, but he called the officer who pulled him over on the night of the shooting to testify that the consent search of the Jeep did not turn up a gun, bullets, or drugs; his girlfriend, who claimed that she had never been to Harris's place and denied helping Knowles dispose of a gun; and a character witness. Appellant also called Chelsea Walker, who was at the courthouse but refused to take the witness stand; Appellant declined the court's offer to compel Walker to testify.

Appellant does not dispute the legal sufficiency of the evidence supporting his conviction. Nevertheless, as is this Court's practice in murder cases, we

have reviewed the record and conclude that, when viewed in the light most favorable to the verdict, the evidence presented at trial and summarized above was sufficient to authorize a rational jury to find Appellant guilty beyond a reasonable doubt of malice murder. See Jackson v. Virginia, 443 U.S. 307, 319 (99 SCt 2781, 61 LE2d 560) (1979). See also Vega v. State, 285 Ga. 32, 33 (673 SE2d 223) (2009) ("'It was for the jury to determine the credibility of the witnesses and to resolve any conflicts or inconsistencies in the evidence.'" (citation omitted)).

2.    Appellant contends that his trial counsel provided ineffective assistance. To prevail on this claim, Appellant must show both that his counsel's performance was professionally deficient and that, but for the deficiency, there is a reasonable probability that the outcome of the trial would have been more favorable to him. See Strickland v. Washington, 466 U.S. 668, 687, 694 (104 SCt 2052, 80 LE2d 674) (1984); Long v. State, 287 Ga. 886, 891 (700 SE2d 399) (2010). "This burden, although not impossible to carry, is a heavy one." Young v. State, 292 Ga. 443, 445 (738 SE2d 575) (2013). We conclude that Appellant failed to carry his burden.

Appellant alleges that his trial counsel performed deficiently in three ways. First, Appellant argues that his counsel should have called GBI Special Agent Spencer Barron, the lead investigator on the case, to impeach the State's witnesses and to introduce positive evidence that Appellant was not present during the shooting. Specifically, he claims that Agent Barron would have been able to testify that Crisp initially said that he did not see the shooting and did not see Appellant at Harris's place at all, and that Harris was originally arrested for the murder. But trial counsel – an experienced criminal defense lawyer – testified at the motion for new trial hearing that she made a strategic decision not to call Agent Barron, because case agents are generally more harmful than helpful to the defense and she was able to use Crisp's initial statements to impeach him on cross-examination. In fact, Agent Barron could have testified that Appellant had admitted to being present at the crime scene and that it was Appellant's initial false statement to law enforcement that led to the arrest of Harris, who was held almost five months before being released.

> [D]ecisions about which witnesses to call at trial "are matters of trial strategy and tactics, and such strategic and tactical decisions do not amount to deficient performance unless they are so unreasonable that no competent attorney would have made them under similar circumstances."

7

Miller v. State, 296 Ga. 9, 12 (764 SE2d 823) (2015) (citation omitted). Appellant has not shown that his trial counsel's strategic decision not to call Agent Barron was entirely unreasonable. Nor has Appellant shown that Agent Barron's testimony would in reasonable probability have led to a more favorable outcome at trial, particularly given the testimony from three other eyewitnesses identifying Appellant as the shooter.

Second, Appellant asserts that his trial counsel should have compelled Walker to testify, even though the record shows that she was incoherent, screaming, and refused to enter the courtroom when called, saying that she was in fear for her life. Appellant contends that Walker could have testified that she saw Southerland shoot Clarke, not Appellant. Trial counsel testified at the motion for new trial hearing that she thought that having the incoherent Walker dragged to the stand against her will would not be beneficial to the defense, as her testimony was unpredictable and might have harmed Appellant. That strategic decision was perfectly reasonable. Moreover, Appellant did not call Walker at the motion for new trial hearing to establish what her trial testimony would have been, and the investigative report that supposedly noted her statement implicating Southerland is not in the record on appeal. See Manriquez

8

v. State, 285 Ga. 880, 881 (684 SE2d 650) (2009) (holding that a defendant who claims that his counsel performed deficiently by not calling a witness at trial may not rely on hearsay and speculation to establish prejudice and instead must present the witness's testimony at the motion for new trial hearing or introduce a legally recognized substitute for the witness's testimony, such as an affidavit). Thus, Appellant has again failed to show either deficient performance or resulting prejudice.

Finally, Appellant contends that his trial counsel should have re-advised him of his right to testify after deciding not to call Agent Barron or to compel Walker's testimony. But Appellant does not dispute that his counsel advised him of his right to testify, and he was present for the entire trial, so he knew that the jury did not hear anyone testify directly that someone else shot Clarke or that Appellant was not present at the scene. Moreover, after all the defense witnesses had been called, the trial court directly asked Appellant whether or not he would testify, explaining that it was his decision, and Appellant affirmatively waived his right to testify. Counsel has no duty to re-advise a defendant throughout trial that he has the right to testify. See Thomas v. State, 282 Ga. 894, 896-897 (655 SE2d 599) (2008). Thus, Appellant failed to establish

9

deficient performance by trial counsel. Furthermore, given the lack of evidence of what his trial testimony would have been, Appellant also has not shown prejudice. See Manriquez, 285 Ga. at 881; Turpin v. Curtis, 278 Ga. 698, 700 (606 SE2d 244) (2004).

3.     Appellant also enumerates as error certain remarks about the State's witnesses made by the prosecutor during her closing argument, which he claims were improper and deprived him of due process. However, Appellant did not object to the prosecutor's argument, so this issue is not preserved for review on appeal. See Powell v. State, 291 Ga. 743, 746 (733 SE2d 294) (2012).

Judgment affirmed. All the Justices concur.