**FIRST DIVISION**
**BARNES, P. J.,**
**MCMILLIAN and REESE, JJ.**

**NOTICE: Motions for reconsideration must be
*physically received* in our clerk's office within ten
days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules**

**May 3, 2018**

# In the Court of Appeals of Georgia

A18A0502. RAMIREZ v. THE STATE.

BARNES, Presiding Judge.

A jury found Huber Harm Ramirez guilty of multiple counts of child molestation and other related offenses, and the trial court denied his amended motion for new trial. On appeal, Ramirez contends that the evidence was insufficient to support his convictions, that he was not present during a critical stage of the trial proceedings, and that his trial counsel rendered ineffective assistance. For the reasons discussed below, we affirm.

"Following a criminal conviction, the defendant is no longer presumed innocent, and we view the evidence in the light most favorable to sustain the verdict." *Anthony v. State*, 317 Ga. App. 807, 807 (732 SE2d 845) (2012). So viewed, the evidence showed that Ramirez lived with his wife, his two daughters, his stepdaughter, and his brother in Gordon County, Georgia. In September 2012, the stepdaughter started second grade. During that school year, Ramirez sexually abused

his stepdaughter in the garage, the bathroom, his bedroom, and the kitchen. Ramirez told her not to tell anyone.

In the garage, the stepdaughter was retrieving her bike when Ramirez told her to come over to where he was working out. Ramirez then pulled down his stepdaughter's pants and touched her genitals. He also touched her chest area underneath her shirt. The stepdaughter asked Ramirez to stop, but he told her to be quiet.

In the bathroom, Ramirez took off his stepdaughter's pants and pulled up her shirt, and then he touched her genitals and her chest area. Ramirez also kissed his stepdaughter on the mouth in the bathroom and placed his mouth on her chest area. On another occasion, Ramirez removed his stepdaughter's towel while she was in the bathroom and put his penis on her genitals. According to the stepdaughter, "white stuff" came out of Ramirez's penis and onto her genitals and belly, and he wiped it off with toilet paper.

In the mother and Ramirez's bedroom, Ramirez asked the stepdaughter to get in the bed with him, and after she complied, he grabbed her hand, placed it down his shorts, and made her "squish" his penis with her hand. Ramirez also placed his finger

2

inside the stepdaughter's vagina on another occasion after calling her into the bedroom. She asked him to stop because it hurt, but he refused to do so.

In the kitchen, Ramirez was cooking dinner, and his two daughters and his stepdaughter were there with him. When one of his daughters went to the restroom, Ramirez asked his other daughter to go to the closet and get an item that he needed for cooking. After his two daughters left the room, Ramirez touched his stepdaughter's breast and genitals over her clothing. Ramirez told his stepdaughter that he wanted to have sex with her in the bathroom.

In April 2013, the stepdaughter disclosed to her second grade teacher that Ramirez would wait for her when she got out of the bathtub and that it made her feel uncomfortable. The teacher stopped the stepdaughter from making any further disclosures and took her to the school counselor. In the counselor's office, the stepdaughter said that Ramirez had been having sex with her. When asked by the counselor to elaborate on what she meant by "sex," the stepdaughter said that she was afraid to tell because she would get in trouble. After further assurances from the counselor, the stepdaughter described incidents that occurred in different rooms of her house where Ramirez touched her chest area and vagina and ejaculated on her

chest. The stepdaughter told the counselor that her mother did not know about the abuse.

A child protective services investigator with the Gordon County Department of Family and Children Services came to the elementary school that same day and spoke with the stepdaughter, who again described several of the incidents of sexual abuse that had occurred at her house. The case thereafter was assigned to a police investigator, who arranged for the stepdaughter to undergo a forensic interview. During the forensic interview, the stepdaughter described the incidents of abuse and marked on an anatomical drawing that Ramirez had touched her chest area and genitals and had touched her bottom "more than one time." The stepdaughter also wrote a short statement during the interview describing an incident in which Ramirez kissed her on the mouth and touched her genitals with his finger.

The police investigator obtained a search warrant for Ramirez's house and photographed a workout bench in the garage and other features of the house that had been described by the stepdaughter in her disclosures about the sexual abuse. Additionally, a pediatric nurse practitioner conducted a physical exam of the stepdaughter and noted, among other things, that she was extremely sensitive to touch, which "usually means that touch to [the child] is painful." The nurse

4

practitioner did not observe any signs of physical injury, but she explained that normal exam results are very common when there are allegations of child sexual abuse and that healing can take place with no residual signs of injury.

Ramirez was arrested and tried on three counts of enticing a child for indecent purposes, nine counts of child molestation, and one count of aggravated sexual battery. The stepdaughter testified at trial and described how Ramirez had sexually abused her, and the second grade teacher, school counselor, and child protective services investigator testified about the disclosures that the stepdaughter made to them regarding the abuse. The pediatric nurse practitioner testified about her physical examination of the stepdaughter, the police investigator testified about his investigation of the abuse allegations, and a video recording of the forensic interview and photographs of the house where the abuse occurred were introduced into evidence. Ramirez elected to testify and denied that he had sexually abused his stepdaughter. He did not call any other defense witnesses.

At the conclusion of the trial, the jury found Ramirez guilty on all of the counts listed above. Ramirez filed a motion for new trial, as amended, contending, among other things, that his trial counsel had rendered ineffective assistance. Following a

hearing in which trial counsel, Ramirez, and the stepdaughter's mother testified, the trial court denied Ramirez's amended motion for new trial. This appeal followed.

1. Ramirez contends that the evidence was insufficient to support his convictions for enticing a child for indecent purposes, child molestation, and aggravated sexual battery because the victim gave "vague, ambiguous, and inconsistent testimony." We disagree.

As our precedent makes clear, "it is within the province of the jury to determine the credibility of witnesses, including the victim, and the weight to be given to their testimony. An appellate court cannot substitute its judgment for that of the jury; we neither weigh the evidence nor determine the credibility of witnesses." (Citation omitted.) *Haslam v. State*, 341 Ga. App. 330, 331 (801 SE2d 61) (2017). Here, the jury had before it for consideration, among other things, the stepdaughter's testimony regarding the sexual abuse, her recorded forensic interview, and the testimony of the second grade teacher, the school counselor, and the child protective services investigator about the stepdaughter's disclosures of abuse to them. Given this combined evidence, a rational jury was authorized to find Ramirez guilty beyond a reasonable doubt of the charged offenses. *Jackson v. Virginia*, 443 U. S. 307 (99 SCt 2781, 61 LE2d 560) (1979). See OCGA §§ 16-6-4 (a) (child molestation); 16-6-5 (a)

6

(enticing a child for indecent purposes); 16-6-22.2 (b) (aggravated sexual battery); *Robinson v. State*, 342 Ga. App. 624, 629 (1) (805 SE2d 103) (2017) (jury could consider victim's prior out-of-court allegations of sexual abuse made during forensic interview and to investigator as substantive evidence under the Child Hearsay Statute, OCGA § 24-8-820); *Kirkland v. State*, 334 Ga. App. 26, 33 (3) (778 SE2d 42) (2015) (jury could consider victim's "prior out-of-court statements about the abuse"); *Ruffin v. State*, 333 Ga. App. 793, 793 (1) (777 SE2d 262) (2015) (noting in case where defendant was found guilty of child molestation, aggravated sexual battery, and other sexual offenses that the "victim's testimony, standing alone, would have been sufficient to authorize a verdict of guilty").

2. Ramirez contends that his constitutional right to be present at all critical stages of the trial proceedings was violated because he was not present at a bench conference during voir dire where the prosecutor's reasons for striking a potential juror were discussed. Again, we disagree.

During the voir dire of the jury panel, the prosecutor asked to approach the bench. Once the prosecutor and defense counsel were present at the bench with the trial court and court reporter, the following colloquy between the prosecutor and the trial court transpired:

7

PROSECUTOR: Your Honor, The State is ready to pick the jury, but I know the Court generally does public strikes in the courtroom, and I wanted to put on the record that it would be the State's intent to strike [one of the potential jurors]. I don't think I've put myself in a position where I could be accused of *Batson* probably in the last fifteen years, but she appears to be the only Hispanic person on the jury, and it would be the State's intent to strike her. I wanted to inform the Court and the defense on the front end that I know for a fact that [the potential juror] went to Calhoun High School with [the stepdaughter's mother and aunt], both of whom [the potential juror] denied knowing when she was asked by both the State and the defense. And I have in the courtroom [the stepdaughter's father]. He also went to Calhoun High School with the three of them. [The potential juror] was friends with his ex-wife and his ex-sister-in-law and the fact that she's not owning up to knowing these people makes me very uncomfortable and he does not want her on his daughter's jury.

COURT: Well, that's certainly an independent reason. I don't know that there's been any *Batson* challenge made at this point.

PROSECUTOR: I just wanted to inform the Court because I know we generally do these publically, and I didn't want to put [defense counsel] or the Court in a position –

COURT: Oh. Well, he certainly – once we complete the strikes, if he wants to make any type of motion for the record, he can, but your reasoning has been stated for the record at this point in time.

PROSECUTOR: Yes, sir.

The trial court then informed defense counsel of the court's procedure in the courtroom for striking jurors, and the bench conference concluded. Ramirez was not present at the bench conference and did not hear what transpired. The potential juror was later struck from the jury panel by the prosecutor with no objection from defense counsel.

Ramirez maintains that he should have been present at the bench conference and that his constitutional rights were violated because of his absence. "The right to be present attaches at any stage of a criminal proceeding that is critical to its outcome if the defendant's presence would contribute to the fairness of the procedure." (Citation and punctuation omitted.) *Huff v. State*, 274 Ga. 110, 111 (2) (549 SE2d 370) (2001). And, "[i]t . . . has long been established that proceedings at which the jury composition is selected or changed are critical stages at which the defendant is entitled to be present." (Citation and punctuation omitted.) *Zamora v. State*, 291 Ga. 512, 518 (7) (b) (731 SE2d 658) (2012). See *Sammons v. State*, 279 Ga. 386, 387 (2) (612 SE2d 785) (2005). A defendant therefore has the right to be present at a bench conference where, as in the present case, the topic of striking a potential juror is

9

discussed. See *Murphy v. State*, 299 Ga. 238, 241 (2) (787 SE2d 721) (2016) (defendant had right to be present at several bench "conferences [that] occurred during jury selection, at a time when the trial judge and counsel were discussing potential motions to strike venire members following the general voir dire"); *Heywood v. State*, 292 Ga. 771, 774 (3) (743 SE2d 12) (2013) (defendant had right to be present at bench conference during voir dire where "the topic included whether to replace [certain] prospective jurors"). Compare *Bennett v. State*, 279 Ga. App. 371, 374-375 (4) (631 SE2d 402) (2006) (defendant did not have right to be present at bench conference during voir dire where trial court simply asked attorneys if they would like to further question a potential juror, after which the potential juror was questioned at length in open court).

Notably, however, the right to be present at a critical stage of a criminal proceeding belongs to the defendant, who

> is free to relinquish that right if he or she so chooses. The right is waived if the defendant personally waives it in court; if counsel waives it at the defendant's express direction; if counsel waives it in open court while the defendant is present; or if counsel waives it and the defendant subsequently acquiesces in the waiver.

*Murphy*, 299 Ga. at 241 (2). And, here, the record reflects that defense counsel waived Ramirez's right to be present at the bench conference at Ramirez's express direction.

During another bench conference that occurred later in the trial, defense counsel stated:

> I've explained to my client that, when we have a bench conference, he has an absolute right to be present if he wished to do so, but I've told him I would explain to him and he's in agreement with me simply discussing it with him at the table rather than being up here.

At the hearing on the motion for new trial, defense counsel testified that while he did not specifically recollect reaching this agreement with Ramirez about how to handle bench conferences, "if I said it, I did it. I mean, I wouldn't make a misrepresentation [to] the Court." Defense counsel further testified that his conversation with Ramirez about waiving his presence at bench conferences would have occurred before trial, and that Ramirez indicated that he was fine with having counsel "go up and speaking directly to the Court" because "[i]f the client ever says, I want to be present, I make the Court aware." Additionally, defense counsel testified that it is his standard practice before trial to discuss with his clients their right to be present at bench

11

conferences and his reasons for why he prefers for them not to be present,[1] and to inform the court if a client indicates to him after their discussion that the client would like to attend the conferences.

This record supports the conclusion that defense counsel reached an agreement with Ramirez before trial that only counsel would attend the bench conferences and would then inform Ramirez of what had been discussed. To the extent that defense counsel did not specifically recollect reaching the agreement with Ramirez, his testimony concerning his standard practice and procedure authorized the trial court to conclude that such an agreement had been reached. See *Jackson v. Hopper*, 243 Ga. 41, 41-42 (252 SE2d 467) (1979) (defense counsel's testimony of his general policy in advising defendants was sufficient to support finding that the defendant in that case had been similarly advised, even though counsel had "no independent recollection" of his conversation with the defendant); *Williams v. State*, 334 Ga. App. 311, 312-313 (779 SE2d 91) (2015) (defense counsel's testimony regarding his general practice when interacting with clients was sufficient to show how counsel

---

[1] Defense counsel testified that it is his standard practice to make sure that his clients who have remained in jail pending trial understand that he prefers for them not to come forward during bench conferences because "when an inmate is incarcerated, deputies will approach, and there's an appearance that I don't want a jury seeing."

interacted with the specific defendant in that case). See also *Bazemore v. State*, 273 Ga. 160, 162 (1) (535 SE2d 760) (2000) ("Certainly, evidence of a routine or standard practice or procedure can be used in demonstrating compliance with constitutional standards."). Accordingly, the record reflects that defense counsel waived Ramirez's right to be present at bench conferences at the express direction of Ramirez, and Ramirez thus relinquished any constitutional right he had to attend the bench conference in which the prosecutor's reasons for striking the potential juror were discussed. See *Hampton v. State*, 282 Ga. 490, 492 (2) (a) (651 SE2d 698) (2007) (defendant waived right to be present during interviews with individual jurors where defendant "personally and affirmatively waived his right to be present . . . and expressly directed his counsel to waive his right to be present"); *Bailey v. State*, 249 Ga. 535, 539 (6) (291 SE2d 704) (1982) (defendant waived right to be present during an in-chambers hearing of certain motions because defense counsel, after conferring with the defendant, obtained his "express permission" to proceed with the motions hearing without the defendant being present). Compare *Pennie v. State*, 271 Ga. 419, 422 (2) (520 SE2d 448) (1999) (counsel's attempted waiver of defendant's right to

13

be present was invalid because it "was made without the knowledge or consent of the defendant").[2]

3. Ramirez contends that defense counsel rendered ineffective assistance in several respects. We are unpersuaded.

> To prevail on this claim, [Ramirez] bears the burden of proving both that the performance of his lawyer was deficient and that he suffered prejudice as a result of this deficient performance. *Strickland v. Washington*, 466 U.S. 668, 687 (III) (104 SCt 2052, 80 LE2d 674) (1984). To demonstrate deficient performance, [Ramirez] must prove that his lawyer's failure . . . was objectively unreasonable, considering all of the circumstances and in light of prevailing professional norms. And to show that prejudice resulted from this deficient performance, [Ramirez] must prove that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.

(Citations and punctuation omitted.) *Burns v. State*, 342 Ga. App. 379, 383-384 (1) (803 SE2d 79) (2017). "If a defendant fails to meet his burden on one prong of the

---

[2] Ramirez argues that any waiver of his presence at bench conferences was conditioned on defense counsel informing him of the substance of those conferences, which Ramirez testified at the new trial hearing never occurred. Any question as to whether defense counsel ultimately carried through with his promise to inform Ramirez of the substance of the bench conferences goes to the issue of ineffective assistance of counsel, which we discuss infra in Division 3 (c).

two-prong test, then the other prong need not be reviewed by the court." (Citation and punctuation omitted.) *Lockridge v. State*, 335 Ga. App. 611, 613 (2) (782 SE2d 674) (2016). In addressing claims of ineffective assistance of counsel, we review the trial court's legal conclusions de novo and its factual findings under the clearly erroneous standard. *Ellison v. State*, 296 Ga. App. 752, 755 (2) (675 SE2d 613) (2009). Guided by these principles, we turn to Ramirez's specific allegations of ineffective assistance.

(a) Ramirez contends that defense counsel was deficient because he failed to sufficiently investigate the facts of the case or consult with him as part of the preparation for trial.

> We strongly presume that the trial counsel rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. In regards to pre-trial preparation, counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary.

(Citations and punctuation omitted.) *Lockridge*, 335 Ga. App. at 613 (2). Additionally, "[t]here exists no magic amount of time which counsel must spend in actual conference with his client." (Citation and punctuation omitted.) *Davis v. State*, 295 Ga. 168, 171 (3) (b) (758 SE2d 296) (2014).

Here, the record shows that the defense counsel hired by Ramirez to represent him at trial had been a practicing lawyer since 1992 and had tried over two hundred jury trials, including multiple child molestation trials before the present criminal proceedings. At the new trial hearing, defense counsel testified that before the criminal trial, he and Ramirez attended lengthy juvenile court deprivation proceedings that addressed the same allegations of sexual abuse and involved virtually all of the same witnesses, including the stepdaughter. According to defense counsel, the present case was "extremely unusual" because he was able to hear "essentially[ ] all of the evidence months in advance of the criminal trial" through the testimony in the juvenile court proceedings, and he was afforded an opportunity in those proceedings to cross-examine the stepdaughter and other witnesses. In essence, defense counsel testified, he got a "free bite at the apple." In addition to having the opportunity to preview the evidence and cross-examine the State's witnesses through the juvenile court proceedings, defense counsel testified that he received the State's case file and reviewed it with Ramirez in preparation of the case, and he investigated the disclosures that the stepdaughter had made to various witnesses and spoke to her family members, including the stepdaughter's mother.

Defense counsel further testified that during the multiple hearings held in this case and during the breaks in the lengthy juvenile court proceedings, he had several discussions with Ramirez about trial strategy and potential defense witnesses. Defense counsel noted that Ramirez had a court-appointed interpreter during court proceedings, and counsel could speak Spanish and Ramirez also could speak some English. Although defense counsel did not recall whether he visited Ramirez at the jail prior to trial, he testified that his standard practice was to meet routinely with his clients in preparation for trial, and that he was sure that he "had many, many conversations with [Ramirez] over that period of time" in the courtroom during the "extensive hours" spent in the juvenile court proceedings and hearings in the criminal case.

Based on this record, the trial court was authorized to find that defense counsel performed a reasonable investigation and sufficiently consulted with Ramirez about the case. While Ramirez testified at the new trial hearing that he and defense counsel had only brief conversations and that his counsel never discussed trial strategy or potential witnesses with him,[3] defense counsel testified otherwise, and "it is the

[3] Ramirez testified that defense counsel never visited him at the jail and introduced the jail visitor log into evidence at the new trial hearing to support his testimony. However, regardless of whether defense counsel visited Ramirez

17

function of the trial court at the hearing on the motion for new trial to determine witness credibility and to resolve any conflicts in the testimony." *Mobley v. State*, 264 Ga. 854, 856 (2) (452 SE2d 500) (1995). Accordingly, Ramirez failed to establish that defense counsel was deficient in his investigation of the case and his consultations with Ramirez.

(b) Ramirez also contends that defense counsel was deficient in failing to call the stepdaughter's mother, who was Ramirez's wife, to testify at trial because she would have cast doubt on the validity of the abuse allegations.

"Decisions about which witnesses to call at trial are matters of trial strategy and tactics, and such strategic and tactical decisions do not amount to deficient performance unless they are so unreasonable that no competent attorney would have made them under similar circumstances." (Citation and punctuation omitted.) *McDuffie v. State*, 298 Ga. 112, 116 (2) (779 SE2d 620) (2015). "And the fact that present counsel disagrees with trial counsel's strategy does not render such strategic decision unreasonable." (Footnote and punctuation omitted.) *Entwisle v. State*, 340 Ga. App. 122, 128 (1) (a) (796 SE2d 743) (2017).

---

specifically at the jail, counsel testified that he had numerous conversations with Ramirez in the courtroom, as previously discussed.

At the new trial hearing, the mother testified that she met with defense counsel before trial and informed him that her daughter had stated that she did not know why she had made the allegations against Ramirez, that she wanted to get Ramirez in trouble, and that the devil was making her accuse him. The mother also testified that her daughter told her that she had witnessed other relatives having sex. According to the mother, if she had been called as a defense witness at trial, she would have testified about these statements made by her daughter.

However, defense counsel testified at the new trial hearing that based on the testimony that the stepdaughter's mother had given in the juvenile court proceedings, including negative statements she had made about Ramirez, he had determined that she would not be a favorable witness. According to defense counsel, the mother's negative testimony would have outweighed any positive testimony and he instead decided to try to introduce the same evidence through other witnesses. In this regard, the trial record reflects that defense counsel elicited from the stepdaughter on cross-examination that she had told someone that the devil made her say the allegations.

In light of this record, Ramirez has failed to show that his counsel's strategic decision not to call the stepdaughter's mother was so unreasonable that no competent attorney would have made the same decision, and he therefore cannot establish that

19

his counsel's performance was deficient. See *McDuffie*, 298 Ga. at 116 (2); *Davis v. State*, 253 Ga. App. 803, 810 (15) (c) (560 SE2d 711) (2002). Furthermore, "the failure to present cumulative evidence through additional witness testimony does not amount to ineffective assistance of counsel," *King v. State*, 320 Ga. App. 90, 96 (4) (c) (i) (739 SE2d 654) (2013), and here, as noted above, the stepdaughter herself testified that she told someone that the devil made her say the allegations. Hence, Ramirez cannot show prejudice resulting from the failure to call the stepdaughter's mother to testify about that same statement. See id.

(c) Ramirez maintains that his trial counsel was deficient in failing to discuss with him the substance of the bench conference where the prosecutor explained why she had decided to strike the potential juror who was Hispanic. According to Ramirez, if he had been apprised of the prosecutor's asserted reasons for striking the potential juror, he "may have been able to refuse those assertions, and thereby put he and his attorney in a position to challenge the strike."

At the new trial hearing, Ramirez testified that defense counsel did not inform him of the substance of the bench conference. But, defense counsel testified at the hearing that while he did not recall whether he discussed the bench conference about the potential juror with Ramirez, it was his standard practice and procedure to discuss

20

the substance of bench conferences with his clients. As previously noted, it is the role of the trial court to determine issues of witness credibility and resolve conflicts in the testimony presented at the new trial hearing. *Mobley*, 264 Ga. at 856 (2). The trial court thus was entitled to credit the testimony of defense counsel regarding his standard practices over that of Ramirez and find that counsel did discuss the substance of the conference with Ramirez. See *Perez v. State*, 331 Ga. App. 164, 169 (3) (b) (770 SE2d 260) (2015); *Rudolph v. State*, 313 Ga. App. 411, 413 (2) (721 SE2d 625) (2011)

Furthermore, Ramirez did not offer any testimony at the new trial hearing about what specific information he could have provided to defense counsel that would have led to a challenge of the prosecutor's strike of the potential juror. "Mere speculation will not support a claim of ineffective assistance of counsel." *Hernandez v. State*, 303 Ga. App. 103, 106 (2) (692 SE2d 712) (2010). Ramirez thus has failed to show any prejudice resulting from defense counsel's alleged failure to inform him of the substance of the bench conference. See *Young v. State*, 327 Ga. App. 852, 859 (5) (b) (v) (761 SE2d 801) (2014) (defendant could not succeed on his claim that his trial counsel was ineffective in failing to object to his absence from bench conferences, where the defendant could not show any prejudice resulting from his absence).

21

(d) Lastly, Ramirez contends that his trial counsel's alleged deficiencies, if considered cumulatively, demonstrate that his representation was so deficient as to constitute ineffective assistance of counsel and require a new trial. Ramirez, however, has failed to show that his trial counsel performed deficiently in any respect. In any event, even if we were to assume for the sake of argument that trial counsel was deficient in some respects, "there is no reasonable probability that, but for those deficiencies, the outcome of [Ramirez's] trial would have been different." (Citation and punctuation omitted.) *Gipson v. State*, 332 Ga. App. 309, 324 (8) (j) (772 SE2d 402) (2015).

*Judgment affirmed. McMillian and Reese, JJ., concur*.