S09A1260. DAVIS v. THE STATE.
(686 SE2d 249)

HUNSTEIN, Chief Justice.

Appellant Desmond Davis was convicted of malice murder, two counts of felony murder, aggravated assault, armed robbery and two firearm possession charges in connection with the shooting death of Jameson Bush. Finding no error in the denial of Davis's motion for new trial,[1] we affirm.

1. Davis contends that the evidence was insufficient to sustain

---

[1] The crimes occurred on August 8, 2007. Davis was indicted in Fulton County on December 14, 2007 and reindicted on February 1, 2008 with co-indictees Darius Morris and David Handy. Davis was charged with malice murder, felony murder based on aggravated assault, felony murder based on possession of a firearm by a convicted felon, aggravated assault, armed robbery, possession of a firearm during the commission of a felony, and possession of a firearm by a convicted felon. Davis's trial was severed from that of his co-indictees and on February 8, 2008 a jury found Davis guilty on all counts. The trial court merged the aggravated assault conviction into the malice murder conviction, and the felony murder convictions were vacated by operation of law. See *Malcolm v. State*, 263 Ga. 369 (4), (5) (434 SE2d 479) (1993). In orders entered on February 11, 2008, the trial court sentenced Davis as a recidivist to life imprisonment plus a consecutive twenty-year sentence for armed robbery and two consecutive five-year sentences on the firearm possession charges. Davis's motion for

the jury's verdict. The evidence authorized the jury to find that at the time of the crimes Bush's friend Adom Martin rented a room in a boarding house, from which he sold marijuana. Martin was with Bush and two other men in the room on the night of August 8, 2007. When Martin and one of the men opened the door to leave, two masked gunmen forced them back inside. One of the gunmen had the lower portion of his face covered with a dark-colored bandana and carried an assault rifle, while the other wore a black "skull cap" and carried a handgun. The gunmen ordered everyone to the ground and asked where the drugs and money were. When Bush stood up and begged the gunmen not to shoot, the man with the assault rifle began firing. The gunmen took money from those in the room and ran out the back of the building. Bush died from gunshot wounds to the head and torso, seven of which came from an assault rifle and one of which came from a handgun.

Martin identified Davis in a photo array as the man with the assault rifle, based on his distinctive eyes and neck. A friend of Davis testified that she was with him on the night of the crimes and that he was wearing a dark-colored bandana pushed down into his shirt. An acquaintance of Davis testified that he repaired Davis's vehicle around the time of the crimes and that Davis had a large amount of cash in his possession; Davis told this acquaintance, "Yeah, I hit a lick" and that he "didn't want to shoot the guy." Davis's then-girlfriend testified that a few days after the crimes, he told her that he "had to kill Shorty because he wouldn't let go of the money." She also testified that Davis had several guns and obtained an assault rifle in August 2007, but that there were no weapons in his residence after the crimes. A friend of Davis's girlfriend, who lived near the scene, testified that he saw Davis driving slowly past his house shortly before the time of the crimes. This witness went to Martin's house to purchase marijuana soon thereafter, and he noticed the car Davis had been driving parked nearby. He approached Martin's door, but ran away when he heard yelling and shooting; when he came back a few minutes later, he saw that the car Davis had been driving was gone. The credibility of these witnesses was a matter lying exclusively within the province of the jury. *Marshall v. State*, 285 Ga. 351 (1) (676 SE2d 201) (2009).

---

new trial was filed on March 4, 2008, amended on September 29, 2008 and December 24, 2008, and denied on February 20, 2009. Davis filed a timely notice of appeal in the Court of Appeals and the case was transferred to this Court. The appeal was docketed on April 16, 2009 and submitted for decision on the briefs. Because the untimely request for an extension of time to file the brief of the District Attorney was denied by this Court, we hereby grant Davis's motion to strike the subsequently-submitted brief, which was not considered in rendering the decision herein.

Viewed in the light most favorable to the verdict, we conclude that the evidence was sufficient for a rational trier of fact to find Davis guilty beyond a reasonable doubt of the crimes for which he was convicted. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. (a) Davis claims that the trial court erred by refusing to suppress Martin's pre-trial identification of Davis because the photo array used was impermissibly suggestive.

> Testimony concerning a pre-trial identification of a defendant should be suppressed if the identification procedure was impermissibly suggestive and, under the totality of the circumstances, the suggestiveness gave rise to a substantial likelihood of misidentification. The taint which renders an identification procedure impermissibly suggestive must come from the method used in the identification procedure. An identification procedure is impermissibly suggestive when it leads the witness to an all but inevitable identification of the defendant as the perpetrator, or is the equivalent of the authorities telling the witness, "(t)his is our suspect."

(Footnotes and punctuation omitted.) *Brooks v. State*, 285 Ga. 246, 248-249 (3) (674 SE2d 871) (2009). "[I]t is well established that if the court does not find that the lineup was suggestive then it need not reach the issue of whether there was a substantial likelihood of misidentification. [Cit.]" *Waters v. State*, 281 Ga. 119, 120 (2) (636 SE2d 538) (2006).

Here, because witnesses had stated that the gunmen's faces were concealed, the detective marked up each of the six photos in the array so that only the area around the eyes was clearly visible. He gave Martin the standard admonition that the array may or may not contain a photo of the perpetrator. Martin identified Davis as the man with the assault rifle and bandana, based on his light brown, "cat-like" eyes. Without commenting on Martin's choice, the detective then showed Martin three unaltered individual photos: one photo of Davis, which was the same as that used in the array and which had "Desmond Davis"[2] and the words "Mug Front" printed on it, and two photos of Davis's known associates with names handwritten on them. Martin again identified Davis as the man with the assault rifle, based on his defined neck and Adam's apple. When

---

[2] Martin testified that at the time of the identification he knew Davis only by his street name.

Martin then asked if he had chosen "Chicago," whom he had heard others in the neighborhood name as the perpetrator, the detective told him that he had identified Desmond Davis, who goes by the street name of Chicago.

Although Davis details the unique qualities of his photo in both the array and the set of individual photos, he has failed to show how these differences would render either identification procedure unduly suggestive. See, e.g., *Waters*, supra, 281 Ga. at 120 (2) (no undue suggestiveness where position of defendant's head differed from others in photo array); *Clark v. State*, 279 Ga. 243 (4) (611 SE2d 38) (2005) (that defendant's photo was only one to appear in multiple photo spreads did not establish that spreads were impermissibly defective). Moreover, Davis has failed to show any action by police that would have led Martin to single Davis out in either group of photos.[3] See *Waters*, supra.

Our review of the record, including the photo array and individual photos, leads us to conclude that the trial court was authorized to find that there was no impermissible suggestiveness. See generally *Williams v. State*, 275 Ga. 622 (2) (571 SE2d 385) (2002). Accordingly, the trial court did not abuse its discretion by denying the motion to suppress Martin's pre-trial identification of Davis.

(b) Davis also contends that the trial court erred by allowing Martin to identify him in court. Davis " 'did not object to the in-court identification[ ] and has, therefore, waived objection to it on appeal. (Cits.)' [Cit.]" *Williams*, supra, 275 Ga. at 624.

3. Davis alleges that his trial counsel was ineffective in failing to investigate or present expert testimony regarding the unreliability of eyewitness identifications. In order to prevail on an ineffective assistance of counsel claim, "a defendant must show both prongs of the *Strickland* test, i.e., that counsel's performance was deficient and that this deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U. S. 668 (104 SC 2052, 80 LE2d 674) (1984)." *Boseman v. State*, 283 Ga. 355, 358 (3) (659 SE2d 364) (2008).

A trial court has the discretion to allow the type of expert testimony at issue "[w]here eyewitness identification of the defendant is a key element of the State's case and there is no substantial

---

[3] Davis takes issue with the detective's response to Martin's question after the second identification, characterizing it as an improper indication that Martin had chosen the "right person." Although "[i]t is not a good practice to indicate to a witness that he has chosen the 'right' person as it could lead to an improper tainting of a subsequent in-court identification in a questionable case," *Dodd v. State*, 236 Ga. 572, 573 (224 SE2d 408) (1976), the comment at issue gave no indication as to whether *police* believed Davis was the "right person." Moreover, Davis's claim that Martin's in-court identification was tainted has not been preserved for review. See Division 2 (b), infra.

corroboration of that identification by other evidence." *Johnson v. State*, 272 Ga. 254, 257 (1) (526 SE2d 549) (2000). However, this is not a case in which the State lacked substantial corroboration of eyewitness testimony. See Division 1, supra; see also, e.g., *Manley v. State*, 284 Ga. 840, 845 (3) (672 SE2d 654) (2009). Even assuming, arguendo, that Martin's identification of Davis was uncorroborated, defense counsel's theory of the case was that those involved were acquainted with each other; that Bush had been targeted for the robbery; and that Martin lacked credibility because he may have played a role in the crimes. The type of expert testimony Davis contends trial counsel should have offered, i.e., testimony regarding the effects of stress and suggestiveness on eyewitness memory, would have been inconsistent with counsel's theory that Martin intentionally misidentified Davis in order to shield himself. "[Davis] has failed to show that trial counsel's strategic decision in this regard was an unreasonable one no competent attorney would have made under similar circumstances. [Cit.]" *Boseman*, supra, 283 Ga. at 359. Because there has been no showing of deficient performance, this claim of ineffective assistance has no merit.

4. Davis also alleges that his trial counsel was ineffective in failing to present any mitigating evidence or argument at sentencing as to those convictions not requiring life imprisonment. However, Davis does not suggest what evidence might have served to mitigate his sentence; he offered no witnesses and proffered no affidavits on this issue at the hearing on the motion for new trial. Because Davis has not satisfied his burden of demonstrating that he was prejudiced by counsel's performance at sentencing, this claim of ineffective assistance must fail. See generally *Franks v. State*, 278 Ga. 246, 263 (2) (B) (7) (599 SE2d 134) (2004).

*Judgment affirmed. All the Justices concur.*

DECIDED NOVEMBER 2, 2009.

*Conway, Strickler & Margolis, Andrew B. Margolis*, for appellant.

*Paul L. Howard, Jr., District Attorney, Marc A. Mallon, Bettieanne C. Hart, Assistant District Attorneys, Thurbert E. Baker, Attorney General, Benjamin H. Pierman, Assistant Attorney General*, for appellee.