In the Supreme Court of Georgia

Decided: September 22, 2014

S14A1096. WINGSTER v. THE STATE

MELTON, Justice.

Following a jury trial, Marquis Wingster was found guilty of malice murder, felony murder, and various other offenses in connection with the shooting death of Mark Boston.[1] On appeal Wingster contends, among other things, that the evidence presented at trial was insufficient to support the verdict

[1] On April 11, 2008, Wingster was indicted for malice murder, two counts of felony murder (predicated on aggravated assault and possession of a firearm by a convicted felon), aggravated assault, possession of a firearm during the commission of a felony, and possession of a firearm by a convicted felon. Following a December 15 - 21, 2009 jury trial, Wingster was found guilty on all charges. On December 21, 2009, the trial court sentenced Wingster to life imprisonment for malice murder and five consecutive years for possession of a firearm during the commission of a felony. The felony murder convictions were vacated by operation of law (see Malcolm v. State, 263 Ga. 369 (4) (434 SE2d 479) (1993)), and the remaining charges of aggravated assault and possession of a firearm by a convicted felon were merged for sentencing purposes. That same day, Wingster filed a motion for new trial, which he amended on June 30, 2010, August 19, 2011, and February 16, 2012. The trial court denied the motion on August 13, 2013. Following the payment of costs, Wingster's timely appeal was docketed in this Court for the April 2014 Term and submitted for decision on the briefs.

and that his trial counsel was ineffective. We affirm.

1. Viewed in the light most favorable to the jury's verdict, the evidence reveals that, at around 9:00pm on November 24, 2007, Wingster, a convicted felon, was standing in a gas station convenience store. Shortly after receiving a phone call, Wingster exited the store, walked up to Boston (who was sitting in a truck), and shot him in front of several witnesses – two of whom knew Wingster personally. Boston suffered gunshot wounds to the head and chest, and died from his injuries.

This evidence was sufficient to enable a rational trier of fact to find Wingster guilty of all of the crimes of which he was convicted beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307 (99 SCt 2781, 61 LE2d 560) (1979).

2. Wingster contends that the trial court erred by denying his motion to strike Juror Number 19 for cause. "The decision to strike a potential juror for cause lies within the sound discretion of the trial court and will not be set aside absent some manifest abuse of that discretion." (Citation omitted.) Abdullah v. State, 284 Ga. 399, 400 (2) (667 SE2d 584) (2008). There is no such manifest abuse of discretion regarding a decision not to strike a juror

2

unless it is shown that the juror's opinion is so fixed and definite that he or she will be unable to set the opinion aside and decide the case based upon the evidence and the trial court's instructions. Neither a prospective juror's doubts as to his ability to be impartial nor his statement that he will try to set aside any preconceived notions mandate as a matter of law that the juror be excused for cause.

(Punctuation and footnotes omitted.) Miller v. State, 275 Ga. 730, 736 (5) (571 SE2d 788) (2002).

Here, Juror 19 stated that, although she was "really against guns," she would "do [her] best" to give the defendant a fair trial by deciding the case based upon the evidence presented. Also, even though Juror 19 further admitted that her beliefs about guns could lead her to think negatively about someone who owned a gun, she stated that she would try her "hardest" to set aside any bias that she may have because it was "[her] duty as a citizen." Under these circumstances, it cannot be said that the trial court abused its discretion in denying Wingster's motion to strike the prospective juror for cause. The prospective juror's self doubts did not "mandate as a matter of law that the juror be excused for cause" (id.) and "[n]othing in the juror's responses compel[led] a finding that she had formed an opinion of [Wingster's] guilt or innocence that was so fixed and definite that she would be unable to set the opinion aside, or

3

that she would be unable to decide the case based upon the court's charge and upon the evidence." Corza v. State, 273 Ga. 164, 167 (3) (539 SE2d 149) (2000).

3. Wingster argues that the trial court erred by overruling his objections to portions of the State's closing argument. Specifically, he claims that the State improperly argued facts that were not in evidence when it stated that Wingster had previously called Boston on the telephone before the murder and that a woman who was with Boston at the time of the shooting "might [have been] a hooker." However, Wingster's arguments are belied by the record. Telephone records introduced at trial revealed that Wingster had called Boston the day before the murder. Furthermore, a detective testified at trial that, during his interview with Wingster, Wingster revealed that the woman who was with Boston at the time of the shooting could have been a prostitute. We find no error. See, e.g. Robinson v. State, 257 Ga. 194 (4) (357 SE2d 74) (1987).

4. Wingster claims that his trial counsel was ineffective for (a) failing to object to Natasha Bell's testimony relating to the photographic lineup evidence of State's Exhibits Eleven and Eleven -A, (b) failing to move to suppress and object to the testimony of Jerrell Smith relating to the photographic lineup

4

evidence of State's Exhibit Seventeen and (c) failing to move to suppress Wingster's involuntary custodial statements.

> In order to succeed on his claim of ineffective assistance, [Wingster] must prove both that his trial counsel's performance was deficient and that there is a reasonable probability that the trial result would have been different if not for the deficient performance. Strickland v. Washington, 466 U. S. 668 (104 SCt 2052, 80 LE2d 674) (1984). If an appellant fails to meet his or her burden of proving either prong of the Strickland test, the reviewing court does not have to examine the other prong. Id. at 697 (IV); Fuller v. State, 277 Ga. 505 (3) (591 SE2d 782) (2004). In reviewing the trial court's decision, "'[w]e accept the trial court's factual findings and credibility determinations unless clearly erroneous, but we independently apply the legal principles to the facts.' [Cit.]" Robinson v. State, 277 Ga. 75, 76 (586 SE2d 313) (2003).

Wright v. State, 291 Ga. 869, 870 (2) (734 SE2d 876) (2012). Furthermore, "[w]hen trial counsel's failure to file a motion to suppress is the basis for a claim of ineffective assistance, the defendant must make a strong showing that the damaging evidence would have been suppressed had counsel made the motion." (Citation and punctuation omitted.) Biggs v. State, 281 Ga. 627, 631-632 (4) (b) (642 SE2d 74) (2007).

(a) Wingster's claims to the contrary notwithstanding, the record reveals that the identification process with respect to Natasha Bell's identification of Wingster was not unduly suggestive. In this regard,

5

[a]n unduly suggestive procedure is one which leads the witness to the virtually inevitable identification of the defendant as the perpetrator, and is equivalent to the authorities telling the witness, 'This is our suspect.' Where the identification procedure is not unduly suggestive, it is not necessary to consider whether there was a substantial likelihood of irreparable misidentification.

(Citations and punctuation omitted.) Williams v. State, 286 Ga. 884, 888 (4) (b) (692 SE2d 374) (2010).

Here, the record reveals that the police did not suggest in any way that Bell needed to choose any particular person from the lineup as the shooter. Nor was the composition of the photographic lineup itself designed to suggest that Bell should pick a particular person, as it featured six African-American males of similar appearance. Bell also testified that she picked Wingster out of the lineup with no aid from police. Because Wingster has not shown that the photographic lineup identification of him would have been inadmissible had his counsel challenged it, his claim of ineffective assistance fails. See Williams v. State, 290 Ga. 533 (2) (a) (722 SE2d 847) (2012).

(b) Contrary to Wingster's assertion, the record reveals that his counsel did in fact file a motion to suppress Jerrell Smith's testimony relating to State's Exhibit 17. This contention of ineffective assistance is therefore without merit.

See Ford v. State, 290 Ga. 45, 47 n.5 (5) (717 SE2d 464) (2011).

(c) The record reveals that, before Wingster was interviewed by police, he signed a voluntary waiver of his right to an attorney after being read his Miranda rights. Then, for the first time at the motion for new trial hearing, he claimed that he had invoked his right to an attorney at the time that he was interviewed by the police, but that the police nevertheless continued to question him. However, there is no evidence of record that Wingster ever informed his trial counsel that he had allegedly invoked his right to an attorney before being interviewed by police, as Wingster did not testify that he ever informed his attorney of this. Nor did Wingster question his trial counsel at the motion for new trial hearing about whether he was ever informed about Wingster's alleged invocation of his right to an attorney before his custodial interrogation. In this regard, Wingster cannot satisfy his burden of showing deficient performance on the part of his trial counsel. Indeed, trial counsel cannot possibly have performed deficiently by failing to act on information that Wingster has not shown that he ever provided to him. See Lewis v. State, 294 Ga. 526 (755 SE2d 156) (2014).

Judgment affirmed. All the Justices concur.