308 Ga. 428
FINAL COPY

S20A0159. ROSEBORO v. THE STATE.

WARREN, Justice.

Raekwon Roseboro was convicted of malice murder and other crimes in connection with the shooting death of Willie Deandre Jackson and the aggravated assault of Kendrick Ellison.[1] On appeal, Roseboro contends that his trial counsel provided

---

[1] The crimes occurred on November 28, 2015. On February 23, 2016, a DeKalb County grand jury indicted Roseboro and Hoye Rashad Anderson for the malice murder of Jackson (Count 1); felony murder of Jackson predicated on aggravated assault (Count 2); felony murder of Jackson predicated on the criminal attempt to purchase marijuana (Count 3); aggravated assault of Jackson (Count 4); criminal attempt to purchase marijuana (Count 5); aggravated assault of Ellison (Count 6); and possession of a firearm during the commission of a felony (Count 7). Anderson entered a guilty plea to voluntary manslaughter on May 22, 2017, and agreed to testify at Roseboro's trial as part of his plea agreement. On June 29, 2017, a jury found Roseboro guilty on all counts. That same day, the trial court sentenced Roseboro to life in prison for Count 1; a concurrent term of five years for Count 5; a concurrent term of 20 years for Count 6; and a suspended consecutive term of five years for Count 7. Counts 2 and 3 were vacated by operation of law, and the trial court later amended the sentence nunc pro tunc to merge count 4 into Count 1.

Roseboro timely filed a motion for new trial on July 17, 2017, which he amended twice through new counsel. After holding two hearings on the motion, the trial court ultimately denied the motion for new trial on July 1, 2019. Roseboro timely filed a notice of appeal, and the case was docketed in this Court for the term beginning in December 2019 and orally argued on January 14, 2020.

constitutionally ineffective assistance. We disagree and affirm Roseboro's convictions.

1. Viewed in the light most favorable to the jury's verdicts, the evidence presented at Roseboro's trial showed that on November 28, 2015, Hoye Rashad Anderson sent a text message to Ellison—whom Anderson knew from high school — seeking to purchase five grams of marijuana and five Percocet pills from Ellison. Jackson, who was with Ellison at the time, drove Ellison to a DeKalb County intersection at approximately 10:00 p.m. for the transaction. Jackson pulled up behind a gray car that was already parked at the intersection. Anderson, Roseboro, and another person were in the gray car. Once Jackson parked behind them, Anderson and Roseboro exited the car and approached the passenger's side of Jackson's car, where Ellison was sitting.

Roseboro was wearing a black hoodie, had a glove on his right hand, and, according to Ellison, was carrying a gun that "looked like a revolver" "on his hip line." Roseboro told Ellison that he did not have enough money to purchase the drugs for the price that Ellison

and Anderson had initially agreed on. Ellison said "that he was going to work with" Roseboro and "going to give him [five] grams [of marijuana] and three Percocets instead of [five]" for the money that Roseboro had with him. Then, while Jackson had his "head down" and was dividing up the drugs, "gunshots rang out." Anderson had looked down at his phone and "when [he] looked up," he saw Roseboro "shooting into [Jackson's] car." Jackson was shot in the head and Ellison was shot in the neck.

As soon as Jackson was shot, his foot hit the gas pedal and the car began "going full speed."[2] The car drove through the intersection, collided with another car, and finally came to a stop after running into an embankment. Ellison was able to escape but was unable to pull Jackson's body out of the car. He ran to a nearby house for help, and the homeowner called 911. The car caught on

---

[2] At trial, the medical examiner agreed that a "spasm or a seizure" resulting from being shot in the head could "cause a person's foot to hit an accelerator after they [sic] have been wounded." The medical examiner testified: "If you tell me [Jackson] was in a car and the car accelerated off and he was behind the driver seat, that wouldn't surprise me a bit. I have seen it a number of times."

fire as police and an ambulance arrived.

Ellison was transported to the hospital, where he gave a statement to detectives and provided descriptions of the suspects. After Ellison left the hospital, he sent Detective Lynn Shuler a picture of Anderson from Anderson's Facebook account and identified Anderson in a six-person photo lineup. Soon after, Anderson was arrested. Anderson later gave a statement to law enforcement identifying Roseboro as the shooter, and Roseboro was ultimately arrested.

At trial, Anderson testified that Roseboro had periodically lived with Anderson in Anderson's mother's home, and that he and Roseboro were so close at one point that "you could have called us brothers." Anderson also testified that he saw Roseboro "shooting into the car" during the drug transaction. In addition, Ellison identified Roseboro in a photo admitted into evidence at trial and also made an in-court identification of Roseboro as the shooter. The medical examiner testified that Jackson's cause of death was a gunshot wound to the head. Additionally, an investigator testified

that, after the shooting, Roseboro's cell phone search history included internet searches for local news stories and "Crime Stoppers" tips about the shooting.

Roseboro does not contest the legal sufficiency of the evidence supporting his convictions. Nevertheless, consistent with this Court's general practice in murder cases, we have reviewed the record and conclude that, when viewed in the light most favorable to the verdicts, the evidence presented at trial was sufficient to authorize a rational jury to find Roseboro guilty beyond a reasonable doubt of the crimes for which he was convicted. See *Jackson v. Virginia*, 443 U.S. 307, 318-319 (99 SCt 2781, 61 LE2d 560) (1979).

2. Roseboro argues that his trial counsel was ineffective for (a) failing to move to suppress a photo identification made by Ellison and (b) failing to call Detective Shuler to impeach Ellison's testimony about a prior identification of Roseboro that Roseboro suggested never happened.

To prevail on a claim of ineffective assistance of counsel, a defendant generally must show that counsel's performance was

deficient and that the deficient performance resulted in prejudice to the defendant. See *Strickland v. Washington*, 466 U.S. 668, 687-695 (104 SCt 2052, 80 LE2d 674) (1984); *Wesley v. State*, 286 Ga. 355, 356 (689 SE2d 280) (2010). To satisfy the deficiency prong, a defendant must demonstrate that his attorney "performed at trial in an objectively unreasonable way considering all the circumstances and in the light of prevailing professional norms." *Romer v. State*, 293 Ga. 339, 344 (745 SE2d 637) (2013); see *Strickland*, 466 U.S. at 687-688. This requires a defendant to overcome the "strong presumption" that trial counsel's performance was adequate. *Marshall v. State*, 297 Ga. 445, 448 (774 SE2d 675) (2015) (citation and punctuation omitted). To carry the burden of overcoming this presumption, a defendant "must show that no reasonable lawyer would have done what his lawyer did, or would have failed to do what his lawyer did not." *Davis v. State*, 299 Ga. 180, 183 (787 SE2d 221) (2016). To satisfy the prejudice prong, a defendant must establish a reasonable probability that, in the absence of counsel's deficient performance, the result of the trial would have been

different.  See *Strickland*, 466 U.S. at 694.  "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id.  "If an appellant fails to meet his or her burden of proving either prong of the *Strickland* test, the reviewing court does not have to examine the other prong."  *Lawrence v. State*, 286 Ga. 533, 533-534 (690 SE2d 801) (2010).

(a) Roseboro argues that his trial counsel was ineffective for failing to move to suppress a photo identification made by Ellison. We disagree.

At the hearing on Roseboro's motion for new trial, the lead prosecutor in Roseboro's case testified that she met with Ellison in her office two or three weeks before trial.  During the meeting, the prosecutor gave Anderson's cell phone[3] to Ellison and asked Ellison if he recognized anyone other than Anderson in the phone's pictures. The prosecutor never asked Ellison to identify Roseboro or the shooter in the case, and no conversation occurred while Ellison was looking through the photos stored on the phone.  At some point,

---

[3] The cell phone was seized from Anderson during his arrest.

Ellison showed the prosecutor a photo from the phone that depicted three males, one of whom was Anderson, and identified the "darker-skinned male," whom the prosecutor knew to be Roseboro, as the shooter.[4] The prosecutor did not say anything in response to Ellison's identification of Roseboro as the shooter. At the motion for new trial hearing, she testified that she "did not believe this was a photographic lineup" and that she handed Ellison the phone because she was "wondering if he recognized anyone in the phone." She also acknowledged that a third suspect had been in the car with Anderson and Roseboro on the night of Jackson's murder who had never been "explored" or "arrested."

The prosecutor also testified that several days before trial, she emailed Roseboro's trial counsel to notify him of Ellison's identification of Roseboro. She wrote:

> Last night I asked Ellison to take a look at some of the pictures from Anderson's phone dump and asked him if he recognized anyone. He immediately indicated upon seeing your client in a group photo that he was the

---

[4] The State admitted this photo into evidence at trial, and Ellison identified Roseboro from that photograph as part of his testimony.

shooter. I can scan you the five photos[5] from the phone dump that he looked at in my presence if you would like.

Trial counsel replied to the prosecutor's email, writing: "They know one another so I don't think there is [an] identification issue and he has been consistent on who he believes the shooter is. Forward them if you have time. If not I can preview them Monday morning."

At the hearing on Roseboro's motion for new trial, Roseboro's trial counsel testified that he might have confused Ellison (a victim) for Anderson (Roseboro's co-indictee) when he read the prosecutor's email, which would explain why he replied that identification was not an issue since Anderson and Roseboro already knew each other.[6]

---

[5] The "five photos" refer to the photographs that the prosecutor printed from Anderson's phone following Ellison's identification of Roseboro. Specifically, the prosecutor testified at the hearing on Roseboro's motion for new trial that she printed "any pictures that included people other than Mr. Anderson," which amounted to five photos. However, she admitted that she could not see Ellison scrolling through the phone, so she is not sure which pictures Ellison actually viewed and had "no way of knowing if he actually looked at all five of [the] photos."

[6] Roseboro argues that this apparent confusion proves that trial counsel's failure to suppress the identification was based on mistake, rather than on strategy, which should constitute deficient performance. However, even assuming that trial counsel did confuse Anderson with Ellison, that confusion has no bearing on whether the prosecutor's method for eliciting Ellison's identification of Roseboro was unduly suggestive, which is — as we explain

When asked why he did not file a motion to suppress when he realized that the identification was made by Ellison — and not Anderson — trial counsel testified that "under normal circumstances, [he] probably [would have] objected," but that when determining whether to move to suppress evidence, he generally considers whether he believes the motion will be granted, among other factors, and does not "go forward with the motion to suppress" if he does not "think it will be granted." He also expressed a strategic preference to cross-examine a witness who makes an identification once, as opposed to twice (once at the motion to suppress hearing and then again at trial) — a scenario that would allow the witness to prepare for the second cross-examination — and testified that he sought to attack Ellison's credibility through cross-examination.

In its order denying Roseboro's motion for new trial, the trial court concluded that if trial counsel had filed a motion to suppress Ellison's identification, it would not have granted the motion

---

below — part of the inquiry in determining whether a photo identification is admissible at trial, and thus whether filing a motion to suppress would be successful.

because under the totality of the circumstances, the identification procedure was not impermissibly suggestive given that the prosecutor "allowed Ellison to view a plethora of photographs by giving Ellison the full phone instead of sole photographs" and the fact that the prosecutor "show[ing] Ellison the phone did not 'lead the witness to an "all but inevitable identification"' of the defendant as the perpetrator.'" (Citation omitted.)

"When trial counsel's failure to file a motion to suppress is the basis for a claim of ineffective assistance, the defendant must make a strong showing that the damaging evidence would have been suppressed had counsel made the motion." *Mosley v. State*, 307 Ga. 711, 720-721 (4) (a) (838 SE2d 289) (2020) (citation and punctuation omitted). Here, for the identification evidence to be excluded, trial counsel would have been required to demonstrate that (1) the identification procedure used was impermissibly suggestive and (2) there was a substantial likelihood of misidentification. See id. "An unduly suggestive procedure is one which leads the witness to the virtually inevitable identification of the defendant as the

perpetrator, and is equivalent to the authorities telling the witness, 'This is our suspect.'" *Williams v. State*, 286 Ga. 884, 888 (692 SE2d 374) (2010) (citation and punctuation omitted).

To argue that the prosecutor used an unduly suggestive identification procedure here, Roseboro points to the prosecutor's alleged noncompliance with OCGA § 17-20-2,[7] a Georgia statute that

---

[7] OCGA § 17-20-2 (a) and (b) provide:

(a) Not later than July 1, 2016, any law enforcement agency that conducts live lineups, photo lineups, or showups shall adopt written policies for using such procedures for the purpose of determining whether a witness identifies someone as the perpetrator of an alleged crime.

(b) Live lineup, photo lineup, and showup policies shall include the following:

(1) With respect to a live lineup, having an individual who does not know the identity of the suspect conduct the live procedure;

(2) With respect to a photo lineup, having an individual:

(A) Who does not know the identity of the suspect conduct the photo lineup; or

(B) Who knows the identity of the suspect use a procedure in which photographs are placed in folders, randomly shuffled, and then presented to the witness so that the individual conducting such procedure cannot physically see which photograph is being viewed by the witness until the procedure is complete;

(3) Providing the witness with instruction that the perpetrator of the alleged crime may or may not be present in the live lineup or photo lineup;

(4) Composing a live lineup or photo lineup so that the

requires law enforcement agencies to adopt written policies for photo lineups (as well as "live lineups" and "showups"), to argue that the prosecutor showing Ellison photos on Anderson's phone was impermissibly suggestive. However, even assuming that OCGA § 17-20-2 applies here and that the prosecutor failed to comply with it, noncompliance with the statute would not result in the automatic exclusion of Ellison's identification. See OCGA § 17-20-3 ("The court may consider the failure to comply with the requirements of this chapter with respect to any challenge to an identification; *provided however, that such failure shall not mandate the exclusion of identification evidence.*") (emphasis supplied). And although

fillers generally resemble the witness's description of the perpetrator of the alleged crime;

(5) Using a minimum of four fillers in a live lineup and a minimum of five fillers in a photo lineup; and

(6) Having the individual conducting a live lineup, photo lineup, or showup seek and document, at the time that an identification of an individual or photograph is made, and in the witness's own words without necessarily referencing a numeric or percentage standard, a clear statement from the witness as to the witness's confidence level that the individual or photograph identified is the individual or photograph of the individual who committed the alleged crime.

Roseboro specifically argues that the prosecutor did not read an admonition form to Ellison prior to handing him Anderson's phone; that there was an insufficient amount of "fillers" in the phone's pictures; and that in Ellison's identification photograph, Roseboro is "the only individual fully framed in the center" of the photo and is "making an obscene gesture," none of those circumstances amount to an unduly suggestive lineup procedure in which the prosecutor led Ellison to a "virtually  inevitable identification of [Roseboro] as the perpetrator," *Williams*, 286 Ga. at 888 (citations and punctuation omitted).  Indeed, we have held that the failure to read an admonition form or the fact that a defendant may appear in multiple photos or be in a different position than other individuals in a photo array does not constitute an impermissibly suggestive lineup.  See *Waters v. State*, 281 Ga. 119, 120 (636 SE2d 538) (2006) (concluding that the defendant "did not make a sufficient showing as to how the differences in his photos would have rendered the lineups or procedures suggestive" where the defendant contended that "the color of his shirt, position of his head, and complexion in

his photograph were different from the other photos" in the lineup but "failed to show how these differences would render either lineup unduly suggestive"); *Clark v. State*, 279 Ga. 243, 245 (611 SE2d 38) (2005) (concluding that "the trial court was authorized to find that there was no impermissible suggestiveness" where the witness identified the defendant in two lineup spreads and the defendant's photograph was the only one to appear in both) (citation and punctuation omitted); *Ivey v. State*, 277 Ga. 875, 876-877 (596 SE2d 612) (2004) (concluding that, although "it would have been preferable for the investigating officer to give the witness the standard admonition that the lineup may or may not contain a picture of the perpetrator," the identification procedure used "did not lead to the inevitable identification of [the defendant] as the perpetrator").

As a result, Roseboro has not shown how any action by the prosecutor was unduly suggestive, see *Davis v. State*, 286 Ga. 74, 77 (686 SE2d 249) (2009) (concluding that "the trial court was authorized to find that there was no impermissible suggestiveness"

where the defendant "failed to show any action by police that would have led [the witness] to single [the defendant] out in either group of photos"), and would have inevitably led Ellison to identify Roseboro out of all the phone's pictures. We therefore conclude that Roseboro has failed to demonstrate that the identification procedure used by the prosecutor was impermissibly suggestive.[8] And "it is well established that if the court does not find that the lineup was suggestive then it need not reach the issue of whether there was a substantial likelihood of misidentification." *Waters*, 281 Ga. at 120. Moreover, because Roseboro has not made a showing that had a motion been filed, the evidence would have been suppressed, we agree with the trial court's conclusion that trial counsel was not deficient. See *Wingster v. State*, 295 Ga. 725, 728 (763 SE2d 680) (2014) ("Because [the defendant] has not shown that the

---

[8] Roseboro also cites *Baier v. State*, 124 Ga. App. 334 (183 SE2d 622) (1971), to argue that the photographs shown to Ellison were similar to the photo lineup held to be suggestive in *Baier*. However, in *Baier*, the defendant appeared in two of the three photos used for the photo lineup, and a mustache was added to the defendant in one of the photos to alter his appearance. See id. at 334-335. By contrast, here, multiple pictures were on Anderson's phone and available for Ellison to look through, and the prosecutor did not alter the appearance of any of those photos.

photographic lineup identification of him would have been inadmissible had his counsel challenged it, his claim of ineffective assistance fails."); *Williams*, 286 Ga. at 888 (concluding that trial counsel was not ineffective for failing to file a motion to suppress where there was "nothing unduly suggestive in the photographic identification procedure . . . that would compel suppression of the identification evidence").[9]

(b) Roseboro argues that his trial counsel provided ineffective assistance by failing to call Detective Shuler to impeach Ellison's testimony about a prior identification that Roseboro suggested never happened.

In the email that the prosecutor sent to Roseboro's trial counsel after her meeting with Ellison in her office, she stated that Ellison

---

[9] Because we agree with the trial court's conclusion that Ellison's out-of-court identification of Roseboro was properly admitted, Roseboro's argument that the trial court would have also excluded Ellison's in-court identification of Roseboro had trial counsel filed a motion to suppress the identification also fails. See *Sharp v. State*, 286 Ga. 799, 803 (692 SE2d 325) (2010) (concluding that the defendant's contention that the out-of-court lineup was impermissibly suggestive had "no merit" and "[b]ecause [the defendant's] challenge to the in-court identification depends upon his contention that the out-of-court identification was unlawful, that challenge also fails").

claimed

> that in January or February of 2016 a detective sent him a picture of someone whom he identified as the shooter. He lost that phone a while ago so we do not have the picture he received. I spoke to the lead detective on the case and he indicated that they would not have sent him a picture via text.

Although Detective Shuler never testified at trial, trial counsel elicited testimony from Ellison on cross-examination concerning this purported text message identification. Trial counsel then relied on the absence of the photo in evidence to cast doubt on the photo's existence and to cast doubt on whether the identification happened at all.

At the hearing on Roseboro's motion for new trial, Detective Shuler testified that he did not show a photo of Roseboro to Ellison; that he would never show a single photo of a suspect to an eyewitness when the witness did not know the suspect; and that he had prepared a six-photo lineup that included Roseboro but never showed it to Ellison. Trial counsel testified that when he discovered that the State was not going to call Detective Shuler at trial, he

thought "it would be dangerous" to put "a witness up not having spoken to that particular witness."[10]  He was also "concerned with [the State's] ability to cross-examine" Detective Shuler and was concerned about Detective Shuler likely being "the last thing that the jury [wa]s going to hear before . . . closing arguments."

The trial court found that trial counsel "thoroughly cross-examined Ellison" regarding his identification of Roseboro; that this cross-examination was "in furtherance of his trial strategy"; and that it would have been "unreasonable" for trial counsel to call "the lead detective during his presentation of the case" where Detective Shuler "would have been able to testify about the case in its entirety."

On appeal, Roseboro relies on *Cartwright v. Caldwell*, 305 Ga. 371 (825 SE2d 168) (2019), to argue that trial counsel was ineffective by failing to subpoena or call Detective Shuler as a witness to

---

[10] Trial counsel recalled contacting the lead detective, Detective Shuler, but was unsure whether he reached out to Detective Shuler before or after he received the prosecutor's email and was ultimately unable to speak with the detective.

impeach Ellison's testimony about his purported prior identification of Roseboro. We disagree. In *Cartwright*, this Court concluded that "no reasonably competent defense attorney would have decided to forgo presenting" evidence or cross-examining a detective to impeach the detective's allegation that the defendant failed to mention his alibi in his post-arrest interview and thus bolster the defendant's alibi defense. 305 Ga. at 379. But we also noted that "the scope of cross-examination will rarely support a claim of deficient performance" and that it appeared that "trial counsel simply whiffed" on the issue. Id.

Here, unlike in *Cartwright*, trial counsel did examine Ellison on the issue of his prior identification — both on cross-examination and re-cross-examination — specifically pointing out that the prosecutor never showed Ellison the picture allegedly sent by Detective Shuler and therefore suggesting the picture did not exist. See *Hites v. State*, 296 Ga. 528, 533 (769 SE2d 364) (2015) ("The scope of cross-examination is . . . grounded in trial tactics and strategy, and consequently, will rarely support a claim of ineffective

assistance of counsel."). The record thus supports that trial counsel chose to attack the credibility of Ellison's purported identification in cross-examination and closing argument instead of — as he testified at the motion for new trial hearing — "putting a witness up not having spoken to" him and opening Detective Shuler up to the State's "ability to cross-examine him and that being probably the last thing that the jury" would hear before closing arguments. See *McDuffie v. State*, 298 Ga. 112, 115-116 (779 SE2d 620) (2015) (concluding that appellant had "not shown that his trial counsel's strategic decision not to call" the lead investigator was "entirely unreasonable" where trial counsel testified at the motion for new trial hearing that the decision not to call the investigator was strategic because "case agents are generally more harmful than helpful to the defense" and she was able to impeach the witness on cross-examination).

"[D]ecisions about which witnesses to call at trial 'are matters of trial strategy and tactics, and such strategic and tactical decisions do not amount to deficient performance unless they are so

unreasonable that no competent attorney would have made them under similar circumstances.'" *Miller v. State*, 296 Ga. 9, 12 (764 SE2d 823) (2014) (citation omitted) (holding that trial counsel was not ineffective for failing to call a witness to contradict eyewitness testimony about the defendant's appearance at the time of the shooting where the lawyers explained their strategy for not calling the witness at the hearing on the motion). Here, Roseboro has not shown that his trial counsel's strategic decision not to call Detective Shuler "fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 688; see *Smith v. State*, 283 Ga. 237, 239 (657 SE2d 523) (2008) (explaining that although "other counsel . . . may have exercised different judgment, the fact that trial counsel chose to try the case in the manner in which it was tried, and made certain difficult decisions regarding the defense tactics to be employed with which appellant and his present counsel now disagree, does not require a finding that the representation below was so inadequate as to amount to a denial of effective assistance of counsel") (citation and punctuation omitted). Accordingly, we agree

with the trial court's conclusion that trial counsel was not deficient for not calling Detective Shuler to impeach Ellison.

(c) Given that neither of Roseboro's enumerations of error amount to deficient performance on the part of trial counsel, Roseboro's argument that the "cumulative harm of these failures to challenge" Ellison's identifications of Roseboro "affected the outcome of trial" is without merit. See *Morton v. State*, 306 Ga. 492, 499-500 (831 SE2d 740) (2019).

*Judgment affirmed. Melton, C. J., Nahmias, P. J., and Blackwell, Boggs, Peterson, Bethel, and Ellington, JJ., concur.*

DECIDED APRIL 6, 2020.
Murder. DeKalb Superior Court. Before Judge Jackson.
*Michael W. Tarleton*, for appellant.
*Sherry Boston, District Attorney, Emily K. Richardson, Destiny H. Bryant, Elizabeth H. Brock, Assistant District Attorneys; Christopher M. Carr, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Matthew M. Youn, Assistant Attorney General*, for appellee.