**FIFTH DIVISION
MCFADDEN, P. J.,
BROWN and MARKLE, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules**

**June 27, 2023**

# In the Court of Appeals of Georgia

A23A0259. JOHNSON v. THE STATE.

MARKLE, Judge.

A jury convicted Courtney Tramon Johnson of kidnapping with bodily injury, rape, robbery by force, aggravated assault, and obstructing officers. Johnson appeals from the trial court's denial of his motion for new trial, contending the trial court erred by improperly admitting other acts evidence under OCGA §§ 24-4-404 (b) and 24-4-403, and by allowing the State to introduce evidence of his refusal to consent to a cheek swab, in violation of his constitutional right against illegal searches and seizures. He further argues that trial counsel rendered ineffective assistance by failing to call medical witnesses to refute evidence of the victim's injuries. Finding no error, we affirm.

Viewed in the light most favorable to the verdict, *Jackson v. Virginia*, 443 U. S. 307 (99 SCt 2781, 61 LE2d 560) (1979), the evidence at trial showed that the victim, a young woman, went out with her friends one night in spring 2017. She was the designated driver and, during the drive home, her friend, Makenzie, passed out due to intoxication. The victim got into an argument with her other friend, Cheyanne, who had also been drinking heavily. The victim pulled the car into a parking lot and called a different friend, Carlie, to come get her. Carlie was able to find the victim's location by using the "Find My Friends" application on her cell phone.

The victim got out of the car, and Cheyanne followed and continued yelling at the victim. Cheyanne then punched the victim in the nose, and drove off in the car with Makenzie still in it. The victim sat down on the curb and waited for Carlie to arrive, remaining on the phone with Carlie. While talking with Carlie, the victim felt an arm come around her neck, and she started screaming, but then a hand closed over her mouth, with the compression getting tighter until she lost consciousness. When she came to, she was on her back in a different location, and Johnson was hovering over her, with his pants open, and he was touching her vagina. When he moved away, the victim realized that she no longer had her purse and her phone. She screamed at Johnson to give them back to her, but then she fled. A passer-by flagged down a

police car, and the victim reported that she had been raped. She had pain in her limbs, her neck, and her vagina; had bruises on her arms and scratches on her legs; and felt like she had been dragged.

Meanwhile, Carlie, who was ten minutes away, had heard the victim scream when she was initially attacked and then a muffled sound as if the phone had hit the ground. Carlie then called law enforcement, and an officer met her at the location where she was going to pick up the victim. While they were trying to locate the victim's phone using the "Find My Friends" application, Johnson ran by and the officer pursued. Ultimately, more officers became involved, and they were able to find Johnson in a heavily wooded area, where they also recovered the victim's phone.

The victim submitted to a sexual assault examination that same night. The nurse who conducted the exam noted abrasions on the victim's face and small pinpoint bruises around the victim's eyes, indicative of strangulation. The victim also had linear abrasions on her back and lower limbs consistent with being dragged. And she had bruising on her shoulders and neck. There was dirt on the exterior and interior of the victim's vagina, but no other injuries. The nurse collected swabs from the victim's cheek and vagina for DNA testing. The police obtained a search warrant

to take swabs of Johnson's cheek for DNA testing. After testing, it was determined that the victim's vaginal swabs matched Johnson's profile.

Based on these facts, Johnson was charged with kidnapping with bodily injury; rape; three counts of aggravated assault; robbery by force; and obstructing an officer. At trial, Johnson testified that he was walking at night when he came upon the victim and Cheyanne "fighting like cats and dogs," and he witnessed Cheyanne beat and kick the victim multiple times. He insisted that, after talking with the victim, she agreed to engage in consensual sex acts with him in the bushes. To explain the presence of his DNA in her vagina, Johnson testified that he ejaculated in his own hand and then later penetrated the victim's vagina with his finger. He denied having intercourse with the victim. He further testified that she threatened to call the police and say that he raped her after she realized that her purse and phone were missing. He also denied choking and dragging the victim, robbing her, or forcing her to have sex against her will.

The jury ultimately found Johnson guilty on all counts. Johnson filed a motion for new trial, raising the issues addressed in this appeal. Following a hearing, the trial court denied the motion, and this appeal followed.

1. Johnson first argues that the trial court erred by admitting evidence of a prior strangling allegation under OCGA § 24-4-404 (b) ("Rule 404 (b)") because it was irrelevant and unduly prejudicial. We conclude the trial court did not abuse its discretion in admitting the other acts evidence.

The State sought to admit testimony from four witnesses regarding a 2007 incident, in which Johnson strangled a woman. Over Johnson's objections, the trial court admitted the evidence for the purpose of intent, and gave a limiting instruction both prior to the testimony and during the jury charge at the close of the case. At trial, M. A. recounted that she had been dating Johnson and, while she was visiting him, they had gotten into an argument over content on her cell phone. After Johnson broke her cell phone, M. A. got in her car to leave. Johnson then picked up a brick and threatened to put it through her windshield. When M. A. rolled down the window, Johnson reached in, choked her, and then pushed her over to the passenger seat while threatening to put her in the trunk if she did not move. Johnson then drove away with M. A. in the car, continuing to attack her, and forcibly preventing her from exiting the car. M. A. was ultimately able to escape. M. A. recounted that she had two black eyes, and bruises on her neck, arms and back as a result of the attack. Two witnesses, who observed the struggle, also testified at trial, and one noted that M. A. had red marks

5

on her neck and had claimed she had been strangled. The responding officer also testified, and reported that M. A. had scrapes and bruises, as well as a significant injury to her eye, as if vessels in her eyes had burst. The trial court then admitted a certified copy of Johnson's conviction and sentence for false imprisonment arising from this incident, to which he was sentenced to ten years, with the first five years in confinement.[1]

Rule 404 (b) provides, in pertinent part:

Evidence of other crimes, wrongs, or acts shall not be admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, including, but not limited to, proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

OCGA § 24-4-404 (b). We will not disturb a trial court's decision to admit other acts evidence under Rule 404 (b) absent "a clear abuse of discretion." *Jackson v. State*, 306 Ga. 69, 76 (2) (b) (829 SE2d 142) (2019); *Kirby v. State*, 304 Ga. 472, 479 (4) (819 SE2d 468) (2018).

Under Georgia law, other acts evidence

---

[1] Johnson was also charged with kidnapping with bodily injury, aggravated assault, and battery, but the State nolle prossed these counts under a plea bargain agreement.

is admissible if (1) the evidence is relevant to an issue in the case other than the defendant's character; (2) the probative value of the evidence is not substantially outweighed by its undue prejudice; and (3) there is sufficient proof for a jury to find by a preponderance of the evidence that the defendant committed the other act.

(Citation omitted.) *Jackson*, 306 Ga. at 76 (2) (b). On appeal, Johnson's argument implicates only the relevance and undue prejudice prongs of this test.

(a) *Relevance*.

Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." OCGA § 24-4-401. As we have explained,

[t]he first prong of the Rule 404 (b) test is met where intent is a material issue on which the State bears the burden of proof and the same state of mind was required for committing the prior act and the charged crimes. In that regard, a defendant puts his intent in issue when he pleads not guilty unless he takes affirmative steps to withdraw intent as an element to be proved by the State.

(Citations and punctuation omitted.) *Wright v. State*, 362 Ga. App. 867, 880 (2) (b) (870 SE2d 484) (2022); see also *Kirby*, 304 Ga. at 480 (4) (a).

Johnson argues that there was no permissive purpose to admit the other acts evidence, and that the state of mind required for the other acts differed from the charged offenses. We disagree.

Notably, Johnson pled not guilty, and did not affirmatively withdraw the issue of intent. See *Wright*, 362 Ga. App. at 880 (2) (b); see also *Kirby*, 304 Ga. at 480 (4) (a). Rather, because Johnson's theory at trial was that the victim's injuries resulted from the fight with her friend and that the sex acts were consensual, his intent was an element the State was required to prove at trial. See *Thompson v. State*, 308 Ga. 854, 858 (2) (843 SE2d 794) (2020) (at trial for aggravated assault and felony murder, intent at issue where husband denied harming his wife to police and suggested her injuries were due to accidental falls); *Jackson*, 306 Ga. at 77 (2) (b) (i). Additionally, the intent for the other acts involving kidnapping and strangulation is the same for the instant charges. See *Howell v. State*, 307 Ga. 865, 874 (3) (838 SE2d 839) (2020) (other acts involving assault and battery relevant to show intent for charges of aggravated assault and aggravated battery); *Jackson*, 306 Ga. at 77 (2) (b) (i); (evidence of prior shooting and aggravated assault relevant to show intent for charges of assault with a deadly weapon); *Olds v. State*, 299 Ga. 65, 72 (2) (786 SE2d 633) (2016) ("[E]vidence that an accused committed an intentional act generally is relevant

8

to show . . . that the same defendant committed a similar act with the same sort of intent[.]"). Accordingly, the other acts evidence was relevant to show intent.

(b) *Undue prejudice*.

> In addressing the second prong of the test, the trial court must apply the balancing test under OCGA § 24-4-403 ("Rule 403"), which provides that "[r]elevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." The application of the Rule 403 test is a matter committed principally to the discretion of the trial courts. The exclusion of relevant evidence under this prong, however, is an extraordinary remedy which should be used only sparingly, since it permits the trial court to exclude concededly probative evidence.

(Citations and punctuation omitted.) *Harvey v. State*, 344 Ga. App. 761, 769-770 (2) (a) (ii) (811 SE2d 479) (2018). And, "in determining the probative value of other acts evidence offered to show intent, [we] should consider the prosecutorial need for the other acts evidence, its similarity to the charged crimes, and its temporal remoteness." *Strong v. State*, 309 Ga. 295, 310 (2) (d) (1) (845 SE2d 653) (2020); *Jackson*, 306 Ga. at 77 (2) (b) (ii).

Johnson contends that the other acts evidence was unfairly prejudicial because the prosecutorial need for it was low and the 2007 incident was not sufficiently similar to the charged crimes. We conclude that the probative value of this evidence was not outweighed by the risk of undue prejudice.

(i) Contrary to his position, the prosecutorial need for the other acts evidence to establish Johnson's intent was strong in light of his defense theory that he had consensual sex with the victim and that her injuries were caused by her friend. See *McWilliams v. State*, 304 Ga. 502, 510 (3) (820 SE2d 33) (2018) (probative value of other acts evidence was great where "the State was left only with appellant's differing narratives" as to "direct evidence of what transpired on the night in question"); *Cross v. State*, 354 Ga. App. 355, 363 (2) (b) (839 SE2d 265) (2020) (finding "the State had a strong need for the evidence to combat [defendant's] attacks on the victim's credibility and to negate [his] defense that the encounter was consensual"); compare *Jackson*, 306 Ga. at 78 (2) (b) (ii) ("lack of any real prosecutorial need" where "[n]either party ever contended that the shooting was unintentional"); *Arrington v. State*, 355 Ga. App. 361, 365 (a) (844 SE2d 256) (2020) (unfair prejudice of prior acts evidence outweighed its probative value where intent was not at issue).

10

(ii) Johnson points to the dissimilarities in the crimes as a basis to find the other acts less probative. However, as we have explained, when

> other acts evidence is introduced to prove intent, a lesser degree of similarity between the charged crime and the extrinsic evidence is required than when other acts evidence is introduced to prove, for example, identity. The trial court here had discretion to consider the similarities and differences and conclude that the evidence of the earlier incident retained substantial probative value.

(Citation and punctuation omitted.) *Campbell v. State*, 359 Ga. App. 391, 394 (3) (b) (858 SE2d 83) (2021); see also *Kirby*, 304 Ga. at 484 (4) (a) (i).

Here, both acts involved strangulation and asportation to deprive a woman of her autonomy. As such, the other acts evidence was probative of Johnson's intent to commit the crimes as charged. See *Campbell*, 359 Ga. App. at 394-395 (3) (b) (affirming trial court's admission of Rule 404 (b) evidence to prove intent despite dissimilarities between circumstances involved in other act and crime as charged); *Taylor v. State*, 358 Ga. App. 773, 781 (2) (a) (ii) (856 SE2d 368) (2021) (noting that, although there were factual dissimilarities between other acts and charged crimes, both "involved deceit as a means to gain a pecuniary benefit"). Moreover, because the prosecutorial need for this evidence to show Johnson's intent was great, we cannot

11

say that the trial court erred in admitting the 2007 incident under this prong. See *Campbell*, 359 Ga. App. at 394 (3) (b); see also *Chase v. State*, 337 Ga. App. 449, 455 (3) (a) (787 SE2d 802) (2016) ("In close cases, the balance is struck in favor of admissibility.") (citation and punctuation omitted). And, although the 2007 incident is disturbing, "[n]othing in the evidence would shock the average juror or otherwise render the jury incapable of weighing the evidence in a disinterested manner[.]" (Citation and punctuation omitted.) *Flowers v. State*, 307 Ga. 618, 623 (2) (837 SE2d 824) (2020).

(iii) There is also no merit to Johnson's argument that the 2007 incident is too remote to be probative. Here, the prior incident occurred ten years before the subject offenses. "There is no bright-line test with regard to the temporal proximity of other acts evidence; rather, this issue is determined on a case-by-case basis." *Taylor v. State*, 358 Ga. App. 773, 781 (2) (a) (ii) (856 SE2d 368) (2021); *Harvey*, 344 Ga. App. at 770 (2) (a) (ii). In *Harvey*, we found no error where the trial court admitted other acts evidence occurring 24 years earlier than the crime at issue. 344 Ga. App. at 770 (2) (a) (ii); but see *Arrington*, 355 Ga. App. at 365 (a) (23 year old convictions too remote where the only purpose of their admission was to show defendant's

12

propensity to commit the offense). And, here, Johnson was sentenced to serve five years in confinement based on his other acts. See *Kirby*, 304 Ga. at 484 (4) (a) (i) ("the prior crime need not be very recent, especially where a substantial portion of the gap in time occurred while the defendant was incarcerated.") (citation and punctuation omitted). Because the prosecutorial need to establish Johnson's intent was great, and there was some similarity between the other acts and the crimes charged, the trial court correctly found the prior convictions were not too remote to be unduly prejudicial. See *Harvey*, 344 Ga. App. at 771 (2) (a) (ii).

Moreover, the trial court mitigated any unfair prejudice by twice cautioning the jury that the other acts evidence could be considered only for the limited purpose of establishing intent. See *Harvey*, 344 Ga. App. at 771 (2) (a) (ii); *Campbell*, 359 Ga. App. at 395 (3) (b). As such, the trial court did not abuse its discretion in determining that the probative value of the other acts was not outweighed by their prejudicial effect.

2. Johnson next contends that the trial court erred by allowing the State to introduce evidence of his refusal to consent to a cheek swab, in violation of his constitutional right against warrantless searches and seizures.[2] We discern no error.

> The Fourth Amendment to the United States Constitution and Paragraph XIII of the Georgia Constitution protect against unreasonable searches and seizures. A warrantless search is per se unreasonable unless it falls within a recognized exception to the warrant requirement. A warrant is not needed where consent is given, and in some cases the doctrine of search incident to lawful arrest also obviates the need for a warrant.

(Citations omitted.) *Olevik v. State*, 302 Ga. 228, 234 (2) (b) (806 SE2d 505) (2017).

At trial, Johnson made a motion for mistrial regarding the State's reference in opening statements that he refused to consent to a cheek swab after he was taken into custody. The trial court denied the motion, and Johnson then made a motion in limine

---

[2] Johnson also contends that the evidence violated his due process rights, but his argument is scant and cites to no substantive authority. We thus deem this argument abandoned. See *Rider v. State*, 366 Ga. App. 260, 272 (6) (883 SE2d 374) (2022). We further note that Johnson fails to cite to the record in his argument under this enumeration of error. Court of Appeals Rule 25 (d) (1) (i) ("Each enumerated error shall be supported in the brief by specific reference to the record or transcript. In the absence of a specific reference, the Court will not search for and may not consider that enumeration.").

regarding evidence of his refusal to submit to the test without a warrant. The trial court again denied the motion, and allowed the State to introduce the video recording of Johnson's custodial statement, in which he refused to allow law enforcement to swab his cheek for DNA evidence.

On appeal, Johnson relies only on *Olevik* to support his contention that this ruling was in error. But his reliance is misguided. In *Olevik*, our Supreme Court recognized that "Georgians do have a constitutional right to refuse to consent to warrantless blood tests, absent some other exception to the warrant requirement."[3] 302 Ga. at 233 (2) (a). Johnson asserts that this protection should be extended to cheek swabs. Importantly, the United States Supreme Court has held that post-arrest cheek swabs do not violate the Fourth Amendment because they are accepted police booking and jailing procedures, similar to fingerprinting and photographing. *Maryland v. King*, 569 U. S. 435, 461 (IV) (B), 465-466 (V) (B) (133 S.Ct. 1958, 186 LE2d 1) (2013). Specifically, unlike a blood test, the Court noted that the buccal swab

---

[3] In *Olevik*, the Court ultimately found that warrantless breath tests, the main focus of that opinion, did not violate the Fourth Amendment of the U. S. Constitution or Paragraph XIII of the Georgia Constitution because they are generally incident to an arrest. 302 Ga. at 234 (2) (b).

procedure "is quick and painless. . . . [,] requires no surgical intrusion beneath the skin, and . . . poses no threat to the health or safety of arrestees[.]" (Citations and punctuation omitted.) Id. at 444 (II) (A). As such, we are not persuaded by Johnson's contention that his constitutional rights were violated in this regard.[4] See id. at 465-466 (V) (B); see also *Olevik*, 302 Ga. at 234 (2) (b) (noting that appellate courts

---

[4] Although it is unclear whether Johnson makes this argument, to the extent he claims that the admission of his refusal to take the DNA test violated his right against self-incrimination, we are also unpersuaded. In *Olevik*, our Supreme Court held that breathalyzer tests violate the right against self-incrimination under Article I, Section I, Paragraph XVI of the Georgia Constitution of 1983 because they require the defendant to perform an affirmative act. 302 Ga. at 244 (2) (c) (iii). However, the Court excepted from its ruling "evidence . . . taken from a defendant's body." Id. at 242 (2) (c) (iii). Specifically, the Court found "the right against compelled self-incrimination is not violated where a defendant is compelled only to be present so that certain incriminating evidence may be procured from him." Id. And, as noted above, cheek swabs require only that the defendant submit to having the evidence removed from his body. *King*, 569 U. S. at 444 (II) (A); see also *Quarterman v. State*, 282 Ga. 383, 386 (4) (651 SE2d 32) (2007) (Statute requiring convicted felons to submit to DNA testing does not violate right against compelled self-incrimination because it "does not force a convicted felon to remove incriminating evidence but only to submit his or her body for the purpose of having the evidence removed."). Because the DNA test is not self-incriminating, the admission of Johnson's refusal to consent to it was not error on this ground. Cf. *State v. Bradberry*, 357 Ga. App. 60, 66 (3) (849 SE2d 790) (2020) ("Because Bradberry had the right to refuse to provide incriminating evidence by performing such an affirmative act under Paragraph XVI, the admission of evidence of his refusal violates the state constitutional right against self-incrimination.").

interpret Paragraph XIII of the Georgia Constitution consistent with the Fourth Amendment).

3. Finally, Johnson argues that he received ineffective assistance of counsel due to trial counsel's failure to call medical witnesses to rebut the State's evidence of the victim's injuries. We conclude that Johnson cannot satisfy his burden to show counsel's decision in this regard was deficient.

> To succeed on a claim that counsel was constitutionally ineffective, [Johnson] must show both that his attorney's performance was deficient, and that he was prejudiced as a result. *Strickland v. Washington*, 466 U. S. 668, 687 (III) (104 SCt 2052, 80 LE2d 674) (1984). Under the first prong of this test, counsel's performance will be found deficient only if it was objectively unreasonable under the circumstances and in light of prevailing professional norms. And under the second prong, prejudice is demonstrated only where there is a reasonable probability that, absent counsel's errors, the result of the trial would have been different. A "reasonable probability" is defined as a probability sufficient to undermine confidence in the outcome. Failure to satisfy either prong of the *Strickland* test is sufficient to defeat a claim of ineffective assistance, and it is not incumbent upon this Court to examine the other prong. And although both the performance and prejudice components of an ineffectiveness inquiry involve mixed questions of law and fact, a trial court's factual findings made in the course of deciding an ineffective assistance of counsel claim will be affirmed by the reviewing court unless clearly erroneous.

17

(Citations and punctuation omitted.) *Green v. State*, 302 Ga. 816, 817-818 (2) (809 SE2d 738) (2018). Bearing these principles in mind, we address Johnson's claim of ineffective assistance, finding no merit to it.

At the new trial hearing, Johnson contended that the victim's medical records from her visit to the hospital, which was on the same day as the sexual assault exam, contradicted the initial medical findings as to her injuries; therefore, trial counsel's failure to call the hospital care providers to impeach the sexual assault nurse's testimony potentially affected the outcome of the case.

On appeal, Johnson asserts that trial counsel testified that he was unsure whether he reviewed the hospital records prior to trial and "did not have a strategic reason for calling the Braselton [hospital] medical witnesses at trial," but this claim is belied by the record. In response to Johnson's examination as to this issue, trial counsel clearly articulated a strategic reason for deciding against calling these medical witnesses at trial:

> The reason I didn't call the doctor or nurse from the Braselton hospital
> was I thought that it would on the whole be worse for Mr. Johnson than
> better because of – I just felt like re-emphasizing [the victim's] injuries
> or the fact that she felt like she needed to go to the hospital would
> generate both sympathy for her and also just re-emphasize that fact.

Under Georgia law, "[d]ecisions about which witnesses to call at trial are matters of trial strategy and tactics, and such strategic and tactical decisions do not amount to deficient performance unless they are so unreasonable that no competent attorney would have made them under similar circumstances." (Citation and punctuation omitted.) *Roseboro v. State*, 308 Ga. 428, 437 (2) (b) (841 SE2d 706) (2020); *McDuffie v. State*, 298 Ga. 112, 116 (2) (779 SE2d 620) (2015). Johnson has offered nothing to show that trial counsel's decision not to call the hospital care providers was patently unreasonable. *Roseboro*, 308 Ga. at 437 (2) (b); *Smith v. State*, 283 Ga. 237, 239 (2) (b) (657 SE2d 523) (2008) ("The fact that appellate counsel would have pursued the defense in different ways or would have chosen to call different witnesses or cross-examine Collins in a different way does not render trial counsel ineffective.").

Moreover, Johnson merely speculates as to what the testimony of these potential witnesses might have been. Therefore, he cannot show that there was a reasonable probability this testimony would have altered the outcome at trial. See *McDuffie*, 298 Ga. at 116 (2); see also *Parrott v. State*, 330 Ga. App. 801, 805-806 (3) (a) (769 SE2d 549) (2015) ("Speculation that error may have occurred is

19

insufficient to show any deficiency on the part of counsel, or prejudice therefrom, and is insufficient to show reversible error.") (citation and punctuation omitted). Accordingly, Johnson cannot meet his burden to show he received ineffective assistance of counsel, and the trial court did not err in denying his motion for new trial on this ground.

*Judgment affirmed. McFadden, P. J., and Brown, J., concur.*